# MARY A. SHAYS *et al.*

## *v.*

# FAULKNER J. NORTON.

1. DEED—*when treated as a mortgage.* Where a deed of conveyance is absolute on its face, it will be held a mortgage, only when it appears that it was the intention of the parties that it should operate as a security for money loaned, or due, at the time when it was executed. But to give it that effect, it should satisfactorily appear that such was the design of the parties. Loose and uncertain evidence, or contradictory evidence, which preponderates in favor of the absolute character of the deed, will not suffice.

2. ATTORNEY IN FACT—*his powers.* Where a party purchases land, subject to a deed of trust, given to secure a debt, and gives the debtor a power of attorney to sell and convey it, and to avoid the expense of a sale by the trustee, he agrees with his creditors that he shall purchase the property in satisfaction of the debt, and the property is so conveyed: *Held,* that the title passes to the creditor.

3. CHANCERY—*jurisdiction, bill to quiet title.* Where a creditor purchases real estate of his debtor, in satisfaction of his debt, but has never taken possession

of the property, and the vendor is claiming to be in possession, and is asserting that the conveyance is but a mortgage and he has the right to redeem the lands, the purchaser may maintain a bill to quiet his title. If, however, he was claiming to have a legal title, held by the vendor in possession, removed, and his legal title established, the remedy at law, in such a case, being complete, the court could not entertain jurisdiction in chancery to afford such relief; but it is otherwise in settling purely equitable rights.

WRIT OF ERROR to the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Messrs. DENT & BLACK, for the plaintiffs in error.

Messrs. MILLER, VAN ARMAN & LEWIS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed by defendant in error, in the Superior Court of Chicago, against plaintiffs in error, to quiet the title to certain lots in that city. It appears that Iglehart & Clayton, in November, 1857, were indebted to defendant in error, in the sum of $4,700, and gave to him their promissory note for that amount; and, to secure the payment of the same, Clayton executed a trust deed to Lucius B. Otis, for the premises in controversy; that in July, 1860, the makers being unable to pay, it was agreed that defendant in error should take a conveyance of the property in satisfaction of the note, and it should be surrendered; that, in the following August, this arrangement was consummated by the trustee, and the persons holding the title subject to the trust deed, conveying the lots to defendant in error, when he surrendered the note to the makers.

It is insisted, that this transaction only amounts to a mortgage as security for the money due upon the note, and not to a conveyance of the title to defendant in error. While courts of equity always look to the nature of the transaction, as manifested by the intention of the parties, and if a deed, absolute on its face, was only intended as a security, it will be treated and enforced as a mortgage, still the courts have never gone the length of holding that the mortgagor may not sell the mortgaged premises to the creditor. Such a rule would be harsh and unreasonable; and the law has not prohibited such transactions, although the form that the transaction may assume will not be regarded, but the intention of the parties, if the transaction be otherwise unobjectionable, will be carried out. Hence, it has been long and uniformly held, that if the parties intend a deed but as a security for a sum of money, it will be treated as such, but if, on the other hand, it is designed as an absolute conveyance, it will be so enforced.

Was this, then, intended as a mortgage or an absolute conveyance? Defendant in error swears that it was a conveyance, and not as a security, and the two Otises testify that it was intended to be a satisfaction of the debt, and to vest the title absolutely in defendant in error. All of the evidence in the case, except that of Iglehart, tends strongly to stamp the transaction as an absolute sale, and not as a security. From the testimony of defendant in error, no other conclusion could be drawn. It is clear, full and consistent, and altogether satisfactory, and clearly sustains the decree, unless the testimony of Iglehart overcomes and destroys its weight.

He testifies that he only intended that the conveyance should operate as a security for the money; that he was to have a year, within which to sell the property and pay the debt. On his cross-examination, he says that, at the time the arrangement was made, he thought defendant in error supposed he had the absolute title in himself, and assigns that as the reason why he said nothing to Judge Otis about his having

a year to redeem; that he was willing defendant in error should remain under the impression that he was acquiring an absolute title. He also says, the reason that he did not reserve the right, by the bond he executed, to redeem within the year, was, because he did not want Judge Otis to know it. Defendant in error testifies, that he did not make such an agreement, and James Otis swears that he was present when the arrangement was consummated, and that defendant said, in Iglehart's presence, " I have bought the lots of Iglehart, if he can make the title good." To which the latter replied, he could. And L. B. Otis testifies, that it was understood that the title was to be conveyed to defendant in error, and the note canceled.

We regard it clear, not only from Iglehart's testimony, but from the other circumstances in the case, that defendant in error intended the conveyance should be, and that he supposed it was, absolute and wholly unconditional. And the witnesses cognizant of the facts disclosed by the parties in having it consummated, so understood it. The fact that defendant in error obtained no greater security, and was giving up the means of immediate sale and realization of his debt, if the property was worth that sum, for a security of another form, to run indefinitely, and have to be foreclosed by a bill in chancery, negatives the supposition that he intended to hold the premises simply as a security. By such an arrangement he would have gained nothing, but would have placed himself in a worse condition. Creditors and money lenders are not, it is believed, accustomed to voluntarily surrender such advantages. But if the evidence of defendant in error, on the one side, and Iglehart on the other, as to the extension of time, were of equal credit, still Iglehart must fail, as he must make out his case by a preponderance of evidence. And it appears that defendant in error is strongly corroborated, as Iglehart failed to speak of the extension of

time, when defendant in error said he had purchased the property, but assented to the statement, by his reply.

We are bound to give credit to defendant in error in his statement, supported, as it is, by corroborating testimony in the case. And Iglehart admits that defendant in error supposed he was obtaining an absolute title, and that he, so far from undeceiving him, encouraged the belief, and systematically refrained from saying or doing any act which would correct the impression. Such conduct is not fair, equitable, or just, and does not commend itself to the conscience of the chancellor. But we are not satisfied that the time was extended for the period of one year, to enable Iglehart to sell the premises and pay the money. On the contrary, we are satisfied that the transaction was intended to be, and was, an absolute sale, and must be supported as such, to carry the intention of the parties into effect. Nor do we see that there was any fraud or unfairness, on the part of defendant in error. He received property, in payment of his debt, which Iglehart admits was unsaleable, that did not increase in value during the next twelve months after the sale, and which real estate agents place at less value than the debt when the purchase was made.

Had this been but a security, the note would not probably have been surrendered, as business men are not in the habit of giving up the evidence of their debts when they obtain security to enable them to enforce payment. Again, had the property not risen, or had it depreciated in value, and defendant in error had filed a bill to foreclose, and to obtain a decree *in personam*, can any one suppose that Iglehart would not have insisted that it was an absolute sale? And, had such a defense been interposed, there is no doubt that on the evidence in this record he would have maintained his defense. To render such transactions a mere security, there must be mutuality. Both parties must be able to treat and enforce it as a mortgage. Had this property fallen in price, we should

probably never have heard it asserted that this transaction only constituted a mortgage.

Inasmuch as Mrs. Shays entrusted her business to Iglehart, and fully empowered him to manage it, as her agent, and as her lot had been previously embraced in the deed of trust, and was subject to it when she purchased it, she can not object to its transfer in satisfaction of the debt.

It is also insisted, that the defendants being in possession, the court had no jurisdiction to entertain this bill, but the party should have been left to his ejectment. It is manifest that an ejectment suit would not have settled the questions presented in this record, as they are strictly of equitable jurisdiction. The question then resolves itself into this,—whether a court of equity will compel a party out of possession, holding the legal title, but against whom a party in possession, or claiming to have possession, is asserting an equitable title, to proceed at law and regain possession, before it will entertain jurisdiction to settle the equities of the parties. As a general rule, where a party has a complete remedy at law, equity will not interfere, but leave the party to seek his rights through his legal remedy. But to this rule there are some exceptions, as, where the relief in chancery is more complete and effectual. *Morris* v. *Thomas*, 17 Ill. 112; *Frazer* v. *Miller*, 16 Ill. 48. And in the case of *Martin* v. *Dryden*, 1 Gilm. 187, it was held, that parties may try the strength of their legal titles at law, but where they seek by bill to remove all liens and encumbrances, if any, created by a proceeding in attachment, and thus to quiet the title by a decree, a court of equity may then exercise its jurisdiction, and determine the equities of the parties. From this authority it seems, that where equitable rights exist, although cognizable in a court of law, a party will not be sent to that forum to assert them, but a court of equity will retain the bill and afford the relief. In that case, as in this, it was insisted that the party could assert his rights at law.

The case of the *Alton Marine and Fire Insurance Company*

v. *Buckmaster*, 13 Ill. 201, is referred to in support of the position relied upon by plaintiffs in error. In that case the court was considering legal, and not equitable, titles; and the court say, " And bills filed for the purpose of quieting one legal title, by the suppression of another, have ever been received by courts of equity with great caution." " The reason why a party out of possession can not maintain such a bill is, that he may bring an action at law to test his title, which, ordinarily, a party in possession can not do. Such a bill is only entertained by a court of equity, because the party is not in a position to force the holder of, or one claiming to defend under the adverse title, into a court of law, to contest its validity; and this, as a general rule, is the test to which a court of equity will look, to determine whether the necessity of the case requires its interference." In that case the question was, whether a court of equity would entertain a bill by the holder of a legal title, out of possession, against a person in possession under a legal title. And, upon authority and principle, the court could not have done otherwise than to hold that it could not entertain jurisdiction to quiet the title, as complainant's remedy was complete at law.

This, however, is wholly a different question. It simply involves the investigation and determination of equitable rights, in nowise affecting the legal right to possession, nor are the legal titles directly involved. If defendant in error held the legal title, which is admitted, and if, as he claims and we think, he has established that his title is absolute, and Iglehart is asserting that he has equitable rights in the premises, which operate as a cloud on his title, and prevents him from selling and disposing of the property, he must have a remedy by which that cloud can be removed, and it is obvious that it can not be done in a court of law, and hence his remedy is in equity. We, are, therefore, of the opinion that the bill was properly retained, and the relief granted. The decree of the court below must be affirmed.

*Decree affirmed.*