EBEN SEARS vs. ADELAIDE L. S. GILMAN & another.

Suffolk.    March 26, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Mortgage.    Trust.    Equity Jurisdiction,* To redeem land conveyed as security by deed absolute in form.    *Laches.    Bankruptcy.*

Where the owner of land conveys it by a deed absolute in form to one who receives it under a parol agreement that the grantee shall hold it to secure the payment of a debt due him from the grantor, such agreement may be discharged without an instrument in writing by a subsequent parol agreement which leaves the title absolute in accordance with the terms of the deed.

One who was the owner of a two sevenths interest in the real estate of a deceased person and was the administrator of his estate, becoming heavily indebted to the owner of the other five sevenths interest in the real estate, who had trusted implicitly to his management, in 1868, without the knowledge of the latter but acting as his agent, conveyed to him his two sevenths interest by deed absolute intending that it should be security for the amount owed to the grantee. The value of the property conveyed was less than the amount of the debt owed. In 1876 the grantor had put himself in a position where he could contend either that the property was held by the grantee as security, or as payment *pro tanto* of the debt. In that year the grantor in an account to the grantee credited himself with the value of the real estate conveyed as payment *pro tanto*, and in his schedule in voluntary bankruptcy proceedings, filed in the same year, did not include the equity in the land as his own, and scheduled as the debt due to the grantee such balance as would have been left if the land had been applied as payment *pro tanto*. The grantee thereupon took entire management and control of the land and sold part of it, and the grantor acquiesced therein until 1903. In 1905 the grantor by a bill in equity sought to have the conveyance of 1868 declared to be in security for a loan, and to redeem the property therefrom. *Held,* that the bill should be dismissed, both because the understanding of the parties in 1876 that the land should be applied as a part payment of the debt relieved the conveyance from the agreement that the land should be treated as security for the debt, and also because the plaintiff through his long acquiescence was barred by laches.

Where one by a deed absolute in form conveyed land to one who agreed to hold it as security for the payment of a debt owed to the grantee by the grantor, and the land so conveyed was worth less than the amount of such debt, and the grantor in 1876 was adjudicated a bankrupt under the national bankruptcy act then in force and agreed with the grantee to treat the land as payment *pro tanto* of the debt, there was no fraudulent preference, since, the land being of less value than the debt owed, the equity was of no value to the creditors.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk May 23, 1905, to redeem certain real estate alleged to have been conveyed by the plaintiff to the defendant

Adelaide L. S. Gilman (hereinafter called the defendant) by a deed absolute in form, but in fact as security merely for the payment of sums due her from the plaintiff. Gorham D. Gilman, the defendant's husband, is joined as a defendant.

The case was referred to a master who filed a report, and, upon various recommittals, two supplementary reports. The substance of the original and supplementary reports is as follows: *

"I find the facts to be as follows: The plaintiff and the defendant are brother and sister. Their uncle, Richard Crease, died in 1866, leaving a large amount of real and personal property, and a will devising the residue of his estate among his seven nephews and nieces, the nephews to take outright and the nieces on certain trusts, which were declared void for remoteness by the Supreme Judicial Court in June, 1869 (*Sears* v. *Putnam*, 102 Mass. 5), with the result that each residuary legatee took one seventh of the estate in fee. . . . The plaintiff was appointed administrator with the will annexed on October 8, 1866. He was at that time engaged in the real estate and shipping business with his brother, Richard W. Sears, as his only partner. The defendant, who was then twenty-six years old and unmarried, lived with one of her sisters. She had some property of her own, which was held by trustees. She was not familiar with business affairs, and all the matters connected with the management of her property she left to the plaintiff, in whom she had implicit faith, and whose advice she followed without question. Shortly after his appointment as administrator of the will of Richard Crease, the plaintiff began to mingle the funds of the estate with his own funds. The plaintiff testified that 'it was largely a matter of policy for all interested for me to do so.' The plaintiff introduced no evidence of any agreement to this effect among the parties except what appears in this report and any inferences that may be drawn from the accounts. . . . I find that the plaintiff never has paid the defendant anything out of the personal estate. He has settled with the other heirs for their share of the personalty. On February 19, 1867, Richard W. Sears, who was heavily indebted to the plaintiff, conveyed to him all his interest as an heir in the

---

* For convenience the amendments and additions contained in the supplementary reports are combined with the original and given as one report.

real estate of Richard Crease, so that the plaintiff became the owner of two undivided sevenths of that real estate.

" On July 7, 1868, the plaintiff prepared and executed a warranty deed in the form annexed to the bill, conveying to the defendant (then Adelaide L. Sears), all the plaintiff's interest (then two sevenths) in the real estate of Richard Crease, and on July 24, 1868, the plaintiff acknowledged and recorded it. This is the conveyance from which the plaintiff now seeks to redeem. The plaintiff did not consult his sister at this time nor inform her of his intention, but prepared, executed, and recorded the deed without her knowledge, and she did not know anything about it for a considerable period of time afterwards. The value of the property conveyed was about equal to the one seventh interest of the defendant in the personal estate of Richard Crease. The consideration stated in this deed was $12,000. I find that no actual consideration passed between the parties unless the deed was made and accepted as payment towards the defendant's share of the personal estate of Richard Crease. . . . In 1873 a suit was brought against the plaintiff and defendant by creditors of Richard W. Sears, who sought to reach his interest in the Crease real estate which had been conveyed through the plaintiff to the defendant. *Giddings* v. *Sears,* 115 Mass. 505. The validity of the conveyance of July 7, 1868, was a material issue. . . . [At the hearing of the suit before a master] the plaintiff testified ' that he made this conveyance to his sister and had it recorded and kept it for her, acting for her as her agent as he did in regard to her other property.' . . .

[After a statement of evidence, the report continued:] " I find that the plaintiff made the conveyance of July 7, 1868, to the defendant without her knowledge, at a time when he was in financial difficulties and had not in his possession, intact, sufficient of the personal estate of Richard Crease to pay to the beneficiaries, other than his brother and himself, their shares in full, for the purpose of making sure that the defendant would get her share of the estate of Richard Crease, and of preventing any other creditors from reaching this property to her injury, and intending, in case he should subsequently be able to settle the Crease estate and distribute the personal property, to have a settlement with his sister, and upon adjusting his account as ad-

ministrator with her to have the real estate reconveyed to him if he so desired, and intending, if unable so to adjust his account, to have a settlement with his sister based on an equitable valuation of the real estate. I find that he did not communicate his intention to her at the time of making the conveyance. . . .

" After [a certain] conveyance to [other heirs] the defendant held title to . . . five parcels of land all in Boston. . . . If the plaintiff's position is correct, the defendant owned one third of this property in her own right, and held two thirds as security for his indebtedness to her.

" All of the Richard Crease real estate was managed from 1866 to the time of division by the plaintiff, acting for all the heirs, and he continued in charge of the five parcels above-described after the division [with other heirs above referred to] until some day about July 1, 1874, when their management was undertaken by the defendant Gorham D. Gilman, who had married Adelaide L. Sears upon May 6, 1874, and since then the plaintiff has not had the management of any of this property, except as hereinafter stated. Gorham D. Gilman took charge of this property, as representing his wife and acting for her, and thereafter the plaintiff had no further dealings or communications (prior to 1903) directly with his sister in relation thereto, but all dealings and communications with this property were had between the plaintiff and Gorham D. Gilman, representing the other defendant, who thereafter obtained all knowledge in relation to the property through Gorham D. Gilman.

" The plaintiff has rendered three accounts to the defendant. . . . The first account covered the period from 1866 to January 1, 1874, and the second from January 1, 1874, to January 1, 1875. Both were rendered to G. D. Gilman at his request after his marriage to the defendant, and both were made up on the same general principle. They contain no reference to the conveyance of July 7, 1868, but the plaintiff charges himself with owing his sister one seventh of the personalty of the Crease estate. In the first account the plaintiff credited his sister with one seventh of the rents collected from the Crease real estate, and in the second account with one fifth of these rents collected after the settlement with [the two heirs previously referred to]. These are the proportions of the rents

which the defendant would be entitled to if the plaintiff's claim is correct, and the plaintiff claims that the rendering to G. D. Gilman of these accounts made up on this basis was notice to him and to the defendant that the plaintiff claimed that the conveyance of July 7, 1868, was by way of security only. The balance due from him by the first account was $17,407.38 and by the second account was $19,436.85. The third account was dated September 18, 1876. It was made up on an entirely different principle from the two preceding accounts in that it treated the plaintiff's indebtedness to his sister as extinguished by the real estate conveyed by the deed of July 7, 1868. The plaintiff charges himself with the balance of his previous accounts and credits himself with the property conveyed to his sister at the valuation put upon it by Willard Sears, leaving a balance due from him to the defendant of $1,492.27. This account was signed ' Boston, September 18, 1876. E. Sears,' in the plaintiff's handwriting. The plaintiff admitted his signature, but denied all recollection of how the account came to be made out in this manner. I find that the account was prepared in the plaintiff's office by his son, signed by the plaintiff, and sent to G. D. Gilman, and that the immediate cause of its preparation was the intention of the plaintiff to go into bankruptcy. . . .

" On November 15, 1876, the plaintiff filed a petition in bankruptcy. His schedules were signed and sworn to by him, and contained separate lists of secured and unsecured creditors of real estate owned by him, and of all real estate held in trust or in which he had any interest in reversion, remainder, or expectancy. The petition contained the printed statement that schedule B ' verified by your petitioner's oath contains an accurate inventory of all his estate both real and personal assignable under the provisions of said acts.' A. L. Gilman was scheduled as an unsecured creditor on open account for $1,492.27, the balance as stated in the account of September 18, 1876. She does not appear in the list of secured creditors. The schedules of real estate owned by the bankrupt, or held in trust for him, or in which he had any interest in reversion, etc., contained no mention of any interest in the real estate conveyed to the defendant by the deed of July 7, 1868. A proof of claim for $1,492.27 was made out by the bankrupt's attorney and sent to

the defendant, with a request for a power of attorney to vote for assignee. These were signed by the defendant and sent to the plaintiff, who subsequently sent word to the defendant that they were incorrect, and the papers were never used. The plaintiff made no attempt to amend his schedules or inform the defendant in what respect they were incorrect. The plaintiff testified that he had little to do with making out his schedules which were prepared by clerks in his office; that they were ' wrong in every way ' ; that he swore to them ' in a general *pro forma* way,' and that he did not consider the real estate held by his sister an asset because he did not consider it worth anything over and above what he owed her. The plaintiff was an experienced man of business, and I find that he knew that his sister held this real estate ; that it was his duty to schedule it if she held it as security, and that it was not scheduled. I find further that he intended, throughout his bankruptcy proceedings, to treat the amount he owed his sister, and did treat it, as paid *pro tanto* by the conveyance of July 7, 1868. . . . The plaintiff received his discharge in bankruptcy January 21, 1879.

[After a statement of evidence, the report stated that, after assuming the management of the property, and before 1897, G. D. Gilman sold all but one parcel; and continued:] " I find, upon all the evidence, that the defendant Gorham D. Gilman, on taking possession of this property, in July, 1874, was not acquainted with the circumstances under which it was conveyed to his wife, but supposed it to belong to her outright, and so treated it thereafter ; and that he first actually knew of the plaintiff's claim in the fall of 1903, when the plaintiff, to whom he had frequently made small loans, applied for a loan, which was refused, whereupon the plaintiff claimed an interest in the Harrison Avenue property, and proposed to raise money by mortgaging it. I find that during this period Gorham D. Gilman had no reasonable cause to believe that the plaintiff claimed any interest in this property. In making this finding I have considered the fact that the accounts submitted to G. D. Gilman, on his taking possession of the property, credited his wife with only a part of the rents collected by the plaintiff. I also find that during this period the plaintiff never asked for an accounting from either defendant, and that no attempt was made by the defendant

Adelaide L. Gilman to enforce any indebtedness of the plaintiff to her. . . .

. " I have reported all the facts which, in my opinion, have any bearing on the question of laches. So far as it is a question of fact, I find that the plaintiff, by conveying this property to his sister and by his subsequent dealings with her, had, by the time of his bankruptcy proceedings in 1876, if not before, put himself in a position where it was possible for him to make either of two claims: (1) that the conveyance was by way of security; or (2) that it was by way of and had been accepted as payment; and that he left the property in his sister's possession for nearly thirty years without demanding any accounting or asserting his right to redeem in an unmistakable manner; and so far as it is a question of fact I find that he has been guilty of laches."

The case was heard on the master's reports and exceptions thereto by *Loring*, J., who made the following memorandum of findings:

" Up to the time of the plaintiff's bankruptcy I think that on the findings of the master the plaintiff intended the status of the two sevenths interest which he had conveyed to his sister to be vague. He conveyed this property to her because he had used some of the estate belonging to her and he did not want her to lose her share. But whether this conveyance was to be as security or whether it was to be taken as payment of the amount which he owed to her, it was not then decided. Then he went into bankruptcy — or rather, just before he went into bankruptcy, his sister was married. I find as an inference from what the master had found, if the master hasn't found it himself — I think he has found it, and I think it is conclusion of law from his report, — but if there is any doubt about that, I find it to be a fact that at the time of his sister's marriage, and in connection with his own bankruptcy, he determined that this conveyance of the two sevenths should thereafter be treated as a final adjustment and payment of the amount which he owed her so far as it went to pay it, adopting the valuation which had been put upon it. Now plaintiff's counsel says there is no offer and no acceptance. Well, the parties have acquiesced in that as a matter of fact for thirty years, and whether by reason of that

fact he is guilty of laches, or whether, as I should prefer to say, the acquiescence is an agreement of itself, that is the end of it. The plaintiff at this time cannot come in and undertake to say that it has been nothing but security during all this period, during which the parties acquiesced and agreed that it should be a payment *pro tanto*. It can no longer be regarded as an open question whether it was security or payment, after a period of thirty years of acquiescence by both in the idea of final payment *pro tanto*. I can see no difficulty in law in such an arrangement being made by parol. All that there was was an absolute conveyance, which, if it had been intended by both parties as security, could have been shown to have been so intended, and such intent in the conveyance could have been made out by word of mouth. That is all there was. Now if under those circumstances they come together and by word of mouth agree that it is not to be taken as security, there is no rule of law which prevents that being done."

The case was thereupon reported by the single justice for consideration by the full court.

*S. C. Bennett*, for the plaintiff.

*H. W. Dunn*, (*J. N. Clark* with him,) for the defendants.

KNOWLTON, C. J. This is a bill to redeem certain real estate conveyed by the plaintiff to his sister, Mrs. Gilman, the principal defendant, who will hereinafter be called the defendant, on July 7, 1868. The deed was absolute in form, and was given for the protection of the defendant from loss by reason of a large indebtedness due her from the plaintiff, which had grown up in connection with his settlement of her uncle's estate in which she was interested as a devisee, and from his management of her property. She trusted him implicitly, and he acted for her in all matters of business pertaining to her property, without restriction. In her behalf he accepted the deed and had it recorded, giving her no information of it until afterwards. In 1876 he went into bankruptcy, and the master has found that by that time, "if not before, he had put himself in a position where it was possible for him to make either of two claims, (1) that the conveyance was by way of security, or (2) that it was by way of and had been accepted as payment; and that he left the property in his sister's possession for nearly thirty years without

demanding any account or asserting his right to redeem in an unmistakable manner." He added, "and so far as it is a question of fact, I find that he has been guilty of laches."

The judge who heard the case upon the master's original and supplementary reports and the plaintiff's exceptions thereto decided that the suit could not be maintained, and reported the case to this court.

The decision for the defendant rests principally upon two grounds : first, that before the plaintiff's bankruptcy in 1876, or about that time, it was understood by both parties that the absolute deed of conveyance from which the plaintiff now seeks to redeem was to be treated as a transfer of the real estate in payment *pro tanto* of the plaintiff's indebtedness to the defendant, it being considered that this indebtedness was more than the value of the property ; and, secondly, that, if the defendant's title did not become good as against the plaintiff by virtue of such an understanding, the plaintiff has been guilty of laches in leaving the property in the defendant's possession without making any claim to it for nearly thirty years, and thereby is precluded from recovery. The defendant is well sustained on both propositions by the master's findings of fact, and by conclusions of fact of the single justice in dealing with the rulings requested. These findings are justified, if not absolutely required, by the evidence reported.

The plaintiff strongly contends that, upon the findings of the master, the deed was at first held merely as security, and that the plaintiff's right to redeem could not be conveyed or surrendered without an instrument in writing, such as is needed under the statute of frauds for the transfer of interests in real estate. If the original purpose was only to give security and to leave the plaintiff with a right to redemption, this purpose was not expressed in the writing, and it could only be made effectual for the protection of the plaintiff by testimony which would establish an equity in his favor. Where a deed is absolute in form and the equities of the grantor to have it held for security lie only in parol, these equities may be discharged by a subsequent parol agreement which leaves the title absolute in accordance with the terms of the deed. *Cramer* v. *Wilson*, 202 Ill. 83, 90. *Baxter* v. *Pritchard*, 122 Iowa, 590, 591. *McMillan* v. *Jewett*,

85 Ala. 476, 481.  *Stall* v. *Jones,* 47 Neb. 706, 716.  *Peugh* v. *Davis,* 96 U. S. 332, 337.  It is held in this Commonwealth and elsewhere, that even where the writings show a mortgage in the form of an absolute deed accompanied by a separate bond of defeasance, the equity of redemption may be given up by a cancellation or redelivery of the bond, and the true state of the title will be sufficiently shown by the original, absolute deed.  *Trull* v. *Skinner,* 17 Pick. 213.  *Falis* v. *Conway Ins. Co.* 7 Allen, 46. *West* v. *Reed,* 55 Ill. 242, 245.  *Haggerty* v. *Brower,* 105 Iowa, 395, 400.  *Shaw* v. *Walbridge,* 33 Ohio St. 1, 5.  *Watson* v. *Edwards,* 105 Cal. 70, 76.  See *Trow* v. *Berry,* 113 Mass. 139, 148. Upon the facts and findings in the present case, the determination of the plaintiff to treat the conveyance as absolute, operating as a payment of his indebtedness to the defendant to the amount of the value of the property, which determination was made known to the defendant and acquiesced in by her, and subsequently acted upon by both for nearly thirty years, was a surrender by the plaintiff of his original right of redemption, which left the defendant with an absolute title.

There was an ample consideration for this in the payment *pro tanto* of his debt to the defendant, which then exceeded the value of the property conveyed.

There is no ground for the contention that this surrender of the right of redemption was a fraudulent preference under the bankruptcy act.  Upon all the evidence, the right was of no consequence to his creditors because the property was not of sufficient value to pay the debt.  There was simply an adjustment of a matter which previously had been left open for adjustment. There is no evidence of an intent to, defraud the plaintiff's creditors.

If this defense were not established, the plaintiff, upon the facts and findings, would be barred by his own laches.

*Bill dismissed with costs.*