In Equity.

LOUIE E. GREENLAW, Executrix, *vs.* EASTPORT SAVINGS BANK et als.

Washington.   Opinion December 7, 1909.

*Mortgages.   Merger.*

While a mortgagor cannot change the mortgage into an absolute conveyance or release or embarrass his equity of redemption by any agreement made part of the mortgage transaction, he can by a subsequent voluntary agreement convey his interest to the mortgagee, if such agreement is bona fide, for an adequate consideration, and is not procured by the mortgagee by fraud, oppression, or undue influence.

In equity.   On report.   Bill dismissed.

Bill in equity against the defendant bank, and seven other defendants, to redeem certain real estate from an alleged equitable mortgage.   The defendant bank filed an answer and the cause was then sent to a referee who heard the matter and found the facts. The cause was then reported to the Law Court on "bill and answer of the Eastport Savings Bank and the report of the referee."

The case is stated in the opinion.

*J. H. McFaul,* and *Curran & Curran,* for plaintiff.

*L. H. Newcomb,* and *E. W. Pike,* for defendants.

SITTING:  WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

KING, J.   Bill in equity to redeem certain real estate from an alleged equitable mortgage.   The case is before this court on report for the determination of the question submitted by the referee, whose report, so far as material to the question presented, is as follows:  "Mary S. Kenney on March 14th, 1887, conveyed to Samuel D. Leavitt by warranty deed absolute in form the real estate described in paragraph one of the bill and in the copy of deed, Exhibit 'A', annexed to the bill.   This conveyance, though

absolute in form, was in fact only for security for loans then made and to be made to Mary S. Kenney to enable her to build a hotel on the land conveyed. These loans were made by the bank, and Mr. Leavitt subsequently conveyed the same land to the bank to hold as security for the loans made by the bank or himself to Mrs. Kenney.

"The hotel cost more than was anticipated and the business did not prove profitable. Mrs. Kenney and her husband, who was running the hotel with a partner, left the hotel, and it was afterwards verbally arranged between them and Leavitt and the bank that the bank should retain the land in full payment for the loans. A bond for reconveyance given by Mr. Leavitt to Mrs. Kenney at the time of her deed, but which had never been recorded, was given back to Mr. Leavitt in pursuance of the arrangement thus made. This was in 1894. Since that time until this proceeding was begun, August 1907, neither Mrs. Kenney nor any one claiming under her has made to the bank any claim of any right to redeem the land as from a mortgage, nor has the bank or Leavitt made any claim for repayment of the loans, and there was no evidence that they held any notes or other evidence of indebtedness for such loans. The bank upon its books transferred the matter from its loan account to its real estate account after the death of Mrs. Kenney in 1895. There does not appear to have been any written release of any equity of redemption, nor was there any statutory foreclosure of such right, if any. The plaintiff has succeeded to all rights of redemption, if any.

"I submit to the court the question whether upon the above statement of facts there is a subsisting right of redemption from the deed of Mary S. Kenney of March 14, 1887. If the court should hold the right to have been extinguished, then the bill is to be dismissed without costs. If the court holds the right to still exist, then the bill is to be sustained against the bank for redemption of the land described in paragraph one, and in the copy of deed, Exhibit 'A', annexed to the bill, but no other land, and a master is to be appointed to state the account."

While it is a well settled principle that a mortgagor will not be

permitted to change the character of the mortgage to that of an
absolute conveyance, or release, surrender or embarrass his right of
redemption by any agreement made at the same time and as a part
of the mortgage transaction, it is also a well settled doctrine that a
mortgagor by a subsequent voluntary agreement may sell and con-
vey to the mortgagee his equity of redemption and all his right and
interest in the mortgaged premises, provided such subsequent agree-
ment is bona fide, for an adequate consideration, and not procured
by fraud, oppression or undue influence on the part of the mortgagee.
The following are some of the cases in which this doctrine is affirmed.
*Trull* v. *Skinner,* 17 Pick. 213; *Watson* v. *Edwards,* 105 Cal.
70, 38 Pac. 527; *Wynkoop* v. *Cowing,* 21 Ill. 570, 583; *West*
v. *Reed,* 55 Ill. 242; *Richmond* v. *Richmond,* 20 Fed. Cases, 11,
801; *Shaw* v. *Walbridge,* 33 Ohio St. 1; *Seymour* v. *Mackay,*
126 Ill. 341, 18 N. E. 552; *Ferguson* v. *Boyd,* (1907) 169 Ind.
537, 81 N. E. 71, 74; Jones on Mort., sec. 252 and 1046; *Sears*
v. *Gilman,* 199 Mass. 384, 393. A brief reference to some of these
cases will show the applicability of the doctrine to the case at bar.
In *Trull* v. *Skinner,* supra, Shaw, C. J. said: "The court are of
opinion, that where an absolute deed is given, accompanied by a
simultaneous instrument, operating by way of defeasance, and
afterwards the parties, by fair mutual stipulations, agree that the
defeasance shall be surrendered and cancelled, with an intent to
vest the estate unconditionally in the grantee, by force of the first
deed, by such surrender and cancellation the estate becomes abso-
lute in the mortgagee. The original conveyance stands unaffected
in form and legal effect; it conveys an estate in fee; the only party
who could claim a right to deny it that operation, by engrafting a
condition upon it, has voluntarily surrendered the only legal evi-
dence by which that claim could be supported, and is thereby
estopped, from setting it up."

In *Watson* v. *Edwards,* supra, it is said: "Appellant contends
that he should have had judgment because the original transaction
between Sullivan and Clark was, in law, a mortgage, and that its
character as a mortgage was not changed, and could not have been
changed, by the subsequent acts, of a surrender of the defeasance,

the yielding up of the note, the discharge of the debt, etc; and that in order to make such a transfer valid there must be some new consideration from the mortgagee to the mortgagor. This contention, in our opinion, cannot be successfully maintained. A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee where the transaction is fair, honest, and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee. It would be surprising if two men in their senses, and with their eyes open, could not make such a contract. The doctrine 'once a mortgage, always a mortgage,' does not refer to future contracts." Again it is said:

"The old and oft-quoted legal maxim, 'once a mortgage always a mortgage,' is undoubtedly to be read and considered with this limitation, 'Once a mortgage always a mortgage until the parties agree to treat it differently.' But when they agree to treat it differently and do so treat it, it loses its character as a mortgage." *Richmond* v. *Richmond*, supra. In the quite recent case of *Ferguson* v. *Boyd*, supra, the court said: "When the legal title is in the mortgagee, so that it becomes necessary for the mortgagor to assert his claim of redemption on the equity side of the court, it does not admit of doubt that he must submit his claim to the testing of equity principles. His right of redemption may subsequently be lost to him by a fair contract which he has voluntarily entered into for the surrender of such right, or it may be defeated by other facts, which upon a consideration of the equities of the whole case, render it inequitable to accord to him the privilege he seeks."

In the case before us the referee has found as a fact, that after seven years from the time of the original transaction, which was in effect a mortgage, the parties mutually agreed that the bank should retain the land "as full payment for the loans," and in pursuance of that agreement the bond for reconveyance was surrendered.

It must be assumed, from the referee's finding, that this subsequent agreement was made, and the bond surrendered, with the intent to vest the estate unconditionally in the grantee of the original deed; that the agreement was voluntary on the part of the mortgagor, and was fair, honest, and not procured by fraud or

undue influence on the part of the mortgagee. It is of significance, too, that from the time of that subsequent agreement in 1894 until this proceeding was begun, a period of 13 years, the conduct of the parties and those claiming under them has been in accord with that new agreement.

Applying the well established doctrine hereinbefore mentioned to the facts as found by the referee and the conclusion necessarily follows, we think, that the right of redemption from the deed of Mary S. Kenney of March 14, 1887 was extinguished by the subsequent agreement of the parties, and is no longer a subsisting right.

Therefore in accordance with the provision of the referee's report the entry must be,

*Bill dismissed without costs.*