DITTO, ET UX. v. BANK OF GILLETTE█
(No. 1418; March 13, 1928, 264 Pac. 1013)

*Wakeman & Dolezal,* and *E. E. Lonabaugh,* for appellants.

122

*Elwood Anderson,* and *C. A. Kutcher,* for respondent.

KIMBALL, Justice.

This is an action to have a deed declared a mortgage.

Until May 5, 1925, the plaintiffs, Samuel D. Ditto and wife, were the owners of 1,160 acres of land on which there were two mortgages. The first mortgage, held by the Denver Joint Stock Land Bank, hereinafter called the "land bank," was a so-called amortization mortgage for about $7,500, on which, on the above mentioned date, there was past due the sum of $861. The second mortgage, held by the defendant, was in the ordinary form, with power of sale,

and secured a debt of $3,600 and interest which, on said date, amounted to $3,851, then past due. This debt to defendant was also secured by a chattel mortgage on livestock and hay belonging to plaintiffs.

On May 5, 1925, the plaintiffs executed and delivered to the defendant a warranty deed to the lands. The deed is unconditional and by its terms conveys to defendant the absolute title to the lands, with a release of the wife's rights of homestead, subject only to the mortgage to the land bank. On the same day, the plaintiffs transferred to defendant by bill of sale the personal property covered by the chattel mortgage. Also on the same day, the plaintiff Samuel D. Ditto and defendant signed a writing which, after designating the defendant as party of the first part and Mr. Ditto as party of the second part, reads as follows:

1. "WITNESSETH: The first party hereby agrees to sell to the second party, and the second party agrees to purchase from the first party, the land hereinafter described, and on the terms and conditions hereinafter set forth. The conditions of this Contract are such that,

2. "WHEREAS, The second party and his wife, Carolyn J. Ditto, have heretofore and prior to the date of this Contract, been indebted to the first party in the sum of $3851.23, and,

3. "WHEREAS, Said indebtedness has been secured by a real estate mortgage on the land hereinafter described, and being the land included in this Contract, and,

4. "WHEREAS, The Denver Joint Stock Land Bank has a first mortgage on said land, amounting to about $7500, and,

5. "WHEREAS, The indebtedness to the first party is now past due, and the second party has given Deed this day to said land to the first party in payment of the indebtedness hereinbefore mentioned, and,

6. "WHEREAS, Such Deed and transfer of said real estate from the second party to the first party has made unnecessary a foreclosure by the first party, and,

7. "WHEREAS, In consideration of the execution of said Deed, the said first party is granting, by this Contract, to the second party, the right to re-purchase said land within a period of eight (8) months from the date of this contract.

8. "NOW THEREFORE, IT IS MUTUALLY UNDERSTOOD AND AGREED, That in consideration of the premises hereinafter set forth, that the first party will re-transfer, by Deed to the second party, the land included in this Contract and hereinafter described, if and when, on or before the 2nd day of January, 1926, the second party shall pay to the first party the sum of $3851.23, together with interest at the rate of Ten (10%) per cent annum thereon from the 2nd day of May, 1925, together with any and all taxes that shall have been paid on said property by the first party, together with all interest or principal that may have then been paid by the first party to the Denver Joint Stock Land Bank on the indebtedness of the second party to the said Denver Joint Stock Land Bank. Second party to have lease on said premises and remain in the possession of same for year 1925 for consideration of $1.00.

9. "IT IS FURTHER UNDERSTOOD AND AGREED, That the second party gave a Bill of Sale to the livestock and hay included in the Chattel Mortgage issued as further security to the first party and dated December 29th, 1924, which said livestock and hay is to be sold at Public Auction by the first party within the next 45 days, and the proceeds thereof applied to the payment of taxes and interest due the Denver Joint Stock Land Bank on their notes and mortgages, and the balance, if any, deducted from the amount to be repaid by the second party in fulfilling the terms of this Contract, and re-obtaining title of said land.

10. "The land included in this Contract is all of the land owned by the second party prior to the date of this Contract, and is the land this day Deeded to the first party by the second party and more particularly described as follows:

(here follows description of lands)

11. "IT IS FURTHER MUTUALLY UNDERSTOOD AND AGREED, That the first party shall have the right to assign and transfer or dispose of its interest in said land subject only to the conditions contained in this Contract."

This contract is dated May 2, 1925, but the evidence shows that it, the deed and the bill of sale were all executed at practically the same time on May 5, as stated above. In our discussion, in referring separately to those instruments, we shall call them, respectively, the deed, bill of sale and contract.

On January 2, 1926, the last day for plaintiffs to exercise their right to repurchase the lands in accordance with the contract, this action was commenced. The plaintiffs in their petition allege that they are the owners of the lands in question; that they executed and delivered to defendant an instrument entitled "warranty deed" to the lands, "which instrument was in truth and in fact not a warranty deed, but an instrument of defeasance, or a mortgage, and it was not intended by plaintiffs to be taken as an instrument of conveyance as a warranty deed to the said lands; and that there was no consideration for the execution of the said instrument entitled 'warranty deed.' " They then allege that plaintiff Samuel D. Ditto, on behalf of himself and his wife, entered into the contract, as quoted above, with the defendant. It is then alleged "that the defendant has not foreclosed its said mortgage, or the plaintiffs of their right to redeem" the lands; and that some of the moneys received by defendant from the sale of the personal property mentioned in the contract has not been applied according to the terms of the contract. It is then alleged that defendant is threatening to sell and convey the lands

to other persons. The prayer is that the defendant be restrained from selling the lands and from recording the deed; that the deed be declared a mortgage; that an accounting be had to settle the amount of the debt secured; and for such other relief as may be equitable.

On the filing of the petition a temporary restraining order was issued restraining the defendant from conveying the lands or recording the deed. It appears, however, that the deed had been recorded May 8, 1925, three days after its delivery. This temporary restraining order was dissolved on January 22, 1926, when plaintiffs failed to comply with an order requiring a bond in an increased amount.

The questions raised on the appeal do not require any particular notice of the defendant's answer. The defendant contended that the deed was intended as an absolute transfer of the lands, and that the contract was intended to give the plaintiffs the right to repurchase.

The trial court decided that the transaction of May 5, 1925, did not result in a mortgage on the lands, but that, as defendant claimed, the deed was an absolute conveyance of the lands, and that at the time of the judgment the plaintiffs had no right, title or interest therein. The plaintiffs appeal. Their principal contention is that the evidence required a judgment declaring the deed a mortgage.

In addition to the facts already stated, the record shows the following facts that are either undisputed or established by substantial evidence.

The plaintiffs' indebtedness to defendant, secured by mortgage of the lands, had been in existence for some 5 or 6 years before 1925. Payment had been frequently extended, and the mortgage renewed. Some time before May 5, 1925, and after plaintiffs were in default on the first mortgage to the land bank as well as on the mortgage to defendant, the plaintiffs requested of defendant another extension of the time of payment. In answer to this request, the defendant's cashier, who acted at all times for the defendant, told Mr. Ditto that the request might be granted except for

threatened action by the land bank, the first mortgagee. According to Mr. Ditto's testimony the cashier said that,—

"the land bank were going to close theirs (their mortgage) and that forced them (defendant) to close, forced them (defendant) to force me then."

This is the only conversation testified to by plaintiffs that throws light on the intention of the parties. Later, the deed, bill of sale and contract, prepared by the defendant's attorney, were executed as already stated. At that time the plaintiffs' notes, secured by the mortgages, were cancelled with the defendant's cancellation stamp, and delivered to plaintiffs. The indebtedness was "charged off" on the bank's books. The deed was recorded. The mortgages were delivered to plaintiffs but were not released on the county clerk's records. The plaintiffs continued in possession of the lands during the year 1925, as provided by paragraph 8 of the contract, but no written lease was ever executed, or requested. The defendant took possession of and sold the personal property transferred by the bill of sale and referred to in paragraph 9 of the contract. The defendant received from the sale of this property $1255.80, and paid out $1098.00, leaving a balance of $157.80. The amount paid out included $861.32 paid the land bank, taxes, insurance, and expenses of selling the property. A statement of those receipts and disbursements was sent to plaintiffs, who at the time made no objection to any of the items. There was no substantial objection thereto at the trial, except as to three disbursement items: $10 paid for preparing papers, $4 for "other expenses," and $20 for insurance, a total of $34. The balance of $157.80 was held by defendant in a "Sam Ditto sale" account until October, 1925, when $262.50 became due the land bank on its mortgage. The defendant then, on Mr. Ditto's request, paid the land bank the sum of $262.50, using for that purpose the balance of $157.80, and $104.70, advanced by defendant.

The buildings on the land were insured against fire by the bank on May 14, 1925, for a period of three years, by a policy to the defendant, and the premium, $20, was paid by the defendant out of the proceeds of the sale of personal property. This was one of the disbursement items questioned at the trial.

Mr. Ditto, after the contract was signed, listed the lands for taxes for the year 1925, but the evidence does not show that he listed them in his name, or that he paid or intended to pay the taxes. The evidence in regard to the value of the lands on May 5, 1925 was conflicting. Plaintiffs' witnesses testified that they were worth from $16 to $20 an acre, while defendant's witnesses placed the valuation at $8.50 to $10 an acre.

There is no doubt that a deed absolute in form, accompanied by a contract for repurchase, will be held to be a mortgage, if it appears that it was given as security for a debt. In so holding, the courts do not assume to make a new or different contract for the parties, but to declare what the contract is.

Each case must be controlled by its own facts. In the case at bar, the relation of mortgagor and mortgagee existed between the parties previous to the transaction in question. The defendant, being asked to grant another extension, refused, and there was no subsequent act or declaration on the part of defendant that showed any intention to modify that refusal. The plaintiffs being in default, and the defendant refusing to grant a further extension, a question for consideration by the parties was whether the defendant's mortgage should be foreclosed. From the conflicting evidence as to the value of the mortgaged lands, the trial court may have believed that the parties thought the property was not worth on the market any more than the amounts secured by the two mortgages. At any rate, it was to be inferred from the evidence that neither the plaintiffs nor defendant wished to have the property further burdened by the expenses of a foreclosure. Looking for a way

to avoid a foreclosure, the parties settled on the plan evidenced by the papers of May 5. The plaintiffs made no allegation of any mistake in the preparation of those papers, nor of any fraud or undue influence by defendants in inducing the plaintiffs to execute them. The only fraud charged in the petition is such as might be inferred from the allegation that defendant was claiming as owner under a transaction that was intended to result in a mortgage. See First Nat. Bank v. Ford, 30 Wyo. 110, 131, 216 Pac. 691, 698, 31 A. L. R. 1441.

There was no substantial evidence from which the trial court could have found that the deed and contract themselves did not fully express the intentions of the parties. The mortgage debt was cancelled by the cancellation and surrender of the notes. The failure of the bank to release the mortgage was a circumstance of little or no importance on the question of the continuance of the mortgage indebtedness. Pittwood v. Spokane Sav. & Loan Soc., 141 Wash. 229, 251 Pac. 283, 285. In arguing that the parties recognized plaintiffs as owners of the lands after the giving of the deed, plaintiffs point to the fact that they remained in possession without a lease, and returned the property for taxation, and to the manner in which defendant handled the moneys received from the sales of the personal property, particularly to the payment of the premium on the insurance policy. It seems to us, however, that those matters, when considered in connection with the other evidence, do not have the force that plaintiffs claim for them. The plaintiffs' possession of the lands was pursuant to their contract right. They may have listed the property for taxation without any thought of asserting a claim of ownership. Defendant's payment of the insurance premium was probably an act of mere thoughtlessness.

The contract of May 5 contains several recitals consistent with defendant's contentions. In paragraph 2, it is said that ''heretofore and prior to the date of this contract'' the plaintiffs have been indebted to the defendant; in paragraph

5, that the deed has been given in payment of the indebtedness; and in paragraph 6, that the deed has made unnecessary a foreclosure. The plaintiffs object to a consideration of these statements in the contract, because they are mere recitals as distinguished from promissory words. We may concede that a recital of a fact contained in a writing does not have the same effect as the words that express the parties' promises, but we think the recitals here mentioned are entitled to some consideration as declarations of the parties.

On the question of the intention of the parties the courts in this class of cases have frequently commented on the unreasonableness of the claim that a mortgagee, taking a deed from the mortgagor, intended a useless formality. In Bailey v. Trust Co., 188 Mo. 483, 492, 87 S. W. 1003, 1005, the court said:

"The idea that this deed was given to the Trust Company as a mere security for their debt and was intended to be merely an equitable mortgage that would have to be foreclosed by a proceeding in a court of equity, is not only repugnant to its terms, and those of the contemporary agreement, but is negatived by all the circumstances attendant upon their execution and the conduct of the parties thereafter. At the time they were executed the defendant had a deed of trust on the property to secure its debt and it is sheer nonsense to suppose that they would have exchanged this better form of security for such a mortgage."

Other cases that refer to the improbability that one already having a mortgage would take another in the form of a deed on the same property, to secure the same debt are: Donovan v. Boeck, 217 Mo. 70, 89, 116 S. W. 543; Creswell v. Smith, 61 S. C. 575, 39 S. E. 757; Tripler v. Campbell, 22 R. I. 262, 47 Atl. 385; Swarm v. Boggs, 12 Wash. 246, 40 Pac. 941; Wilson v. Parshall, 129 N. Y. 223, 29 N. E. 297; Tygret v. Potter, 97 Ky. 54, 29 S. W. 976; Shays v. Norton, 48 Ill. 100.

We know of no rule of law that prevents a mortgagor and mortgagee from making a fair contract that will avoid

the necessity of a foreclosure. See: Phipps v. Munson, 50 Conn. 267; Stoutz v. Rouse, 84 Ala. 309, 4 So. 170. That was evidently the purpose of the parties in this case. If, on May 5, the defendant had started foreclosure of its mortgage under the power of sale, the period required for advertisement and sale added to the six months period for redemption (C. S. 1920, Secs. 4635, 6008, 6018) would have amounted to about eight months, the time given by the contract for the repurchase of the property. Thus, the plaintiffs were given by the contract to repurchase a right to reacquire the property for a less amount than would have been required to redeem if the property on foreclosure had been bid in for the amount of the debt and expenses of foreclosure. The plaintiffs did not repurchase, but waited until the time to repurchase was about to expire, and then, by this aciton, without making any offer to redeem, asked that the deed be declared a mortgage. If their prayer had been granted, they would have secured an extension of the payment of the mortgage indebtedness, and forced the defendant to a foreclosure—the very things which, by the transaction of May 5, the parties sought to avoid. The transaction of May 5, insofar as it affected the real property, would have been virtually set aside after the plaintiffs had obtained an advantage under it. When the plaintiffs ask that their deed be treated as a mortgage, they must submit their claim to the test of equitable principles. Ferguson v. Boyd, 169 Ind. 537, 547, 81 N. E. 71, 74, 82 N. E. 1064; Greenlaw v. Eastport Sav. Bank, 106 Me. 205, 76 Atl. 485. It would seem inequitable to defendant now to have the transaction of May 5 set aside, by holding that it has nothing but a mortgage which must be foreclosed.

In stating our conclusion, we have not deemed it necessary to discuss at any length the general principles that govern in cases where the grantor in a deed seeks to have it declared a mortgage. We have several decisions of this court that refer to those principles. Weltner v. Thurmond, 17 Wyo. 268, 98 Pac. 590, 99 Pac. 1128; Baldwin v. Mc-

Donald, 24 Wyo. 108, 156 Pac. 27; Bolln v. La Prele Live-
stock Co., 27 Wyo. 335, 196 Pac. 748; McFadden v. French,
29 Wyo. 401, 213 Pac. 760. No two cases present the same
facts. One of the important tests is whether there was a
debt as a personal obligation of the grantor, and it is often
said that if there is no such debt, the result of the trans-
action is not a mortgage. Bolln v. La Prele Livestock Co.,
supra. In cases similar to the one at bar, where the mort-
gagor has given a deed to the mortgagee with an accom-
panying right of repurchase, the courts, in holding that
the transaction did not result in a mortgage, frequently
make a point of the fact that the contract for repurchase
was a mere option. See Miracle v. Stone, 190 Ky. 610, 227
S. W. 1011, and some of the cases cited, supra. And where
the result is held to be a mortgage, weight is given to the
fact that the grantor promised to repurchase. Smith v.
Hoff, 23 N. D. 37, 135 N. W. 772, Ann. Cas. 1914C, 1072.
In our case, the plaintiffs claim that by paragraph 1 of the
contract, they were bound to repurchase the property, while
the defendant contends that the contract, construed as a
whole, merely gave to plaintiffs an option to repurchase. It
is not necessary for the purposes of this decision to express
an opinion as to the meaning of the contract on this point.
If the contract did require the plaintiffs to repurchase the
property, it is clear that defendant has not attempted to
enforce the contract in that respect, and likely that the
plaintiffs have always understood that there would be no
effort to enforce it. But, however that may be, we do not
believe that the fact that plaintiffs promised to repurchase
would require a different conclusion as to the effect and
validity of the transaction of May 5, as declared by the
judgment (See Tripler v. Campbell, 22 R. I. 262, 47 Atl.
385); although, under different circumstances, the grant-
or's unconditional promise to repurchase the property might
raise a presumption that the transaction was intended as a
security for a debt, and lead a court of equity to declare
the deed a mortgage.

There are several assignments of error, in regard to the sustaining of objections to questions asked on the direct examinations of the two plaintiffs. We do not believe these assignments require discussion. We are sure that no evidence was excluded that could or should have influenced the court to render a different judgment.

The judgment of the District Court is affirmed.

BLUME, C. J., and RINER, J., concur.