**HUNTER, Ex'r, v. MURPHY et al.**

No. 16862—Opinion Filed July 13, 1926.

Rehearing Denied April 12, 1927.

**1. Abatement and Revival—Revival of Action in Name of Executor—Real Estate Directed by Will to be Sold Regarded as Personalty.**

It is proper to revive the cause in the name of the executor, mentioned in the will, who has been appointed and qualified as such, where an action involving real estate is pending in this court and the plaintiff in error dies intestate, and the will attached to; the petition to revive directs the real estate be sold by the executor and converted into money to carry out the provisions of the will; under section 11285, Comp. Stats. 1921,

the said real estate must be deemed to be personal property.

**2. Appeal and Error — Review of Equity Case—Evidence.**

In a case of purely equitable cognizance, the judgment of the trial court will not be disturbed on appeal, unless it is clearly against the weight of the evidence.

**3. Same—Action to Have Deed Absolute Declared a Mortgage.**

An action to have a deed, absolute on its face, declared to be a mortgage is one of purely equitable cognizance and, in such cases, it is the duty of this court to weigh the evidence and decide the appeal in accordance therewith; and the burden of proof rests upon the party asserting that the instrument was intended as a mortgage, and such proof must be cogent, convincing, clear and satisfactory.

**4. Mortgages—Action to Have Deed Absolute Declared a Mortgage—Proof.**

To overcome the presumption arising under section 5272, Comp. Stats. 1921, and to establish that a deed, absolute on its face, is, in fact, a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail.

**5. Same—Insufficiency of Evidence.**

Evidence examined, and held to show by clear weight of the evidence that the deed was executed as an absolute conveyance and not as a mortgage.

(Syllabus by Thompson, C.)

Commissioners' Opinion Division No. 5.

Error from District Court, Kay County; Claude Duval, Judge.

Action by Thos. J. McElroy against Thomas J. Murphy et al. Judgment for defendants, and plaintiff appealed, and having died, action revived in the name of John S. Hunter, executor of the estate of deceased. Affirmed.

John S. Hunter and Walter Marlin, for plaintiff in error.

Sullivan & Sullivan, R. J. Shive, and J. E. Burns, for defendants in error.

Chas. L. Moore, amicus curiae.

Opinion by THOMPSON, C. This action was commenced in the district court of Kay county, Okla., by Thomas J. McElroy, as plaintiff, who died during the pendency of this appeal, and the cause was revived in this court in the name of John S. Hunter, executor of the estate of Thomas J. McElroy, deceased, plaintiff in error, against Thomas J. Murphy, as defendant, and Roy

C. Kinkaid and Mary A. Sager were made parties defendant on motion of the plaintiff, and Anna McElroy was made defendant on motion of defendant Murphy, all of whom are defendants in error, to have a deed to 160 acres of land in Kay county, which was absolute in form, declared a, mortgage. Parties will be referred to as plaintiff and defendants as they appeared in the lower court.

Plaintiff, in his petition, alleged, in substance, that he entered said land and obtained title from the government of the United States and received patent therefor; that on September 27, 1899, he and his wife, Anna McElroy, one of the defendants, resided upon said land as their homestead, and, in order to pay the expenses of making final proofs and to pay the purchase price of $2.50 per acre for said lands, borrowed $500 from Thomas J. Murphy, who was a brother of Anna McElroy, for that purpose; that on said date, to secure said loan they executed a warranty deed to Thomas J. Murphy on said land, which deed was placed of record on September 27, 1899, and, while said conveyance was in the form of a warranty deed, it was, in fact and so agreed upon, understood and intended between the parties thereto, to be a mortgage for the amount of the consideration of $500 expressed by the deed; that the land at the time was worth more than said amount; that, after the execution of said instrument, he and his wife, Anna McElroy, lived. on the land for sometime, and he, being engaged in the railway service, was absent from home and lived a number of years in California and other places; that he and his wife and family lived and remained upon the land until 1914, at which time the residence was destroyed by fire, and that he returned for the purpose of providing a new home thereon, and on his return his wife sued him and obtained a decree of divorce from him; that the defendant Anna McElroy, entered into a conspiracy with Thomas J. Murphy to deprive the plaintiff of the lands, and they are seeking to defraud the plaintiff of said land by virtue of the conveyance heretofore referred to; that at the time of the execution of the conveyance, he and his wife had no title to the land; that the title was still in the Government of the United States, and that the conveyance could not, under such circumstances, have other or further effect between him and the defendant Thomas J. Murphy, than a mortgage, the same having been executed prior to the issuance of the patent from the government; that the defendant Thomas J. Murphy had conveyed a portion

of the lands to other parties with intent to defraud the plaintiff; that the defendant had never been in actual possession of the lands or exercised acts of ownership or control over the same, except by execution of deeds to other parties, and the execution of a lease on the east half of the land in controversy to the Chamber of Commerce of Ponca City, Okla. Plaintiff tendered into court the sum of $500 and interest from September 2, 1899, at the rate of six per cent. per annum for the use and benefit of the defendant Thomas J. Murphy, and asked that a receiver be appointed to take charge of the lands pending litigation. and claimed to be the legal owner in fee simple of the entire 160 acres; that the warranty deed, heretofore referred to, to Thomas J. Murphy, the conveyances by Thomas J. Murphy to other parties, and the lease of Murphy to the Chamber of Commerce of Ponca City constituted a cloud upon the title of plaintiff and he asked that a decree be entered, confirming title in himself, and declaring none of the defendants to have any interest therein; that the warranty deed be reformed and declared a mortgage; that he be permitted to pay off the mortgage debt, and that title be quieted in himself, and that defendants be enjoined from asserting any right, title, or interest therein.

To this petition the defendant Thomas J. Murphy filed his separate answer, entering a general denial, but admitting that the plaintiff obtained his land by homestead entry and patent from the United States of America, and alleged that on the 27th day of September, 1899, the plaintiff, in conjunction with his wife, Anna McElroy, one of the defendants herein, made, executed, and delivered their general warranty deed, conveying to him all their right, title, and interest in said property, and specially denied that the deed was ever intended as a mortgage. or that it was executed with the meaning and intent that it should be a mortgage or for security for the payment of a debt or obligation of any kind, but that the same was intended for and was an absolute conveyance of both the legal and equitable title to him; that at the same time the conveyance of the 160 acres was made to him, under the direction of the plaintiff, he made, executed, and delivered to Edith Ransom 80 acres of the land in dispute in payment to Charles Ransom, the husband of Edith Ransom, as an attorney's fee for representing the plaintiff in a contest proceeding before the Land Department of the United States, in connection with the lands in controversy; that he has paid the taxes upon the land

continuously each year since execution of the deed, and that he, through his codefendant Anna McElroy, by his consent, has been in exclusive, adverse, and notorious possession, claiming ownership of the lands since the execution of said deed; that he had been in such possession for over 20 years, and that plaintiff's cause of action was therefore barred by the statute of limitation. For further defense the defendant alleged that, on the 2nd day of July, 1903, the plaintiff filed his petition in the district court of Kay county, territory of Oklahoma, against him, Edith Ransom, and others, as defendants, in civil case No. 2323, alleging the same facts, and prayed for the same identical relief as in this case; that said action involved the same subject-matter, and that on the 15th day of February, 1904, the plaintiff filed his sworn written dismissal, with prejudice to another action against this defendant, and paid the costs of the same, and the case was dismissed by the court; that on the 24th day of April, 1919, the plaintiff filed his amended petition in the district court of Kay county, Okla., in case No. 6741, against him as defendant, involving the same subject-matter, setting forth the same allegations and praying for the same decree and judgment as is prayed for in this cause; that on the 11th day of October, 1919, said cause No. 6741 was dismissed by the district court of Kay county, Okla., and that by virtue of said two causes of action, involving the same subject-matter between the same parties, having been disposed of by the court, all matters and things had been adjudicated, determined, and settled, and the plaintiff was barred from maintaining this cause, and for his cross-petition he claimed to be the owner in fee simple of the east half of the lands in controversy; that he had been in peaceable possession thereof for over 24 years when the action was filed, and prayed that the title to the land be quieted and confirmed in him. Defendant Anna McElroy answered by general denial, and made further allegations similar to the answer of defendant Thomas J. Murphy. The defendants Mary Sager and Roy C. Kinkaid, claimed the west half of the lands in controversy through the deed of plaintiff and his wife to their codefendant, Thomas J. Murphy, and from him to Edith Ransom and through several successive conveyances, through other parties, by which they obtained title, and also pleaded the statute of limitations, and that they were innocent purchasers for a valuable consideration.

The plaintiff replied to the answers, in substance, by way of general denial, and alleged the taxes were paid out of the proceeds from the land; that defendant Murphy was never in possession of the lands and was never a resident of the state of Oklahoma; that defendants Mary A. Sager and Roy C. Kinkaid are not innocent purchasers for value, and that his rights are not barred by former adjudication.

At the close of the testimony on part of the plaintiff, the defendants demurred to the sufficiency of the evidence, which demurrer was overruled, and defendants reserved their exception, and at the close of all the testimony, the court, at the request of parties, made its findings of fact and conclusions of law adverse to the plaintiff, and in favor of the defendants, quieting title to the west half of the northeast quarter of section 29, township 26 north, range 2 east of the Indian Meridian, in the defendants Roy C. Kinkaid and Mary A. Sager, and quieting title in the east half of said quarter section in the defendant Thomas J. Murphy. After an unsuccessful motion for new trial filed by the plaintiff. the court rendered its judgment in conformity with said findings of fact against the plaintiff, and in favor of the defendants, from which judgment of the court the plaintiff appealed to this court for review.

The attorneys for plaintiff submit their argument upon the propositions: First, that the deed, though absolute in form, was a mortgage to secure payment of money loaned; second, that the defendants Roy C. Kinkaid and Mary A. Sager were not innocent purchasers; third, that the plaintiff's cause of action was not barred by statute of limitation or laches on his part; and fourth, that plaintiff's right was not adjudicated in former actions.

Briefs of Charles L. Moore, amicus curiae, were also filed in the cause, which discuss the propositions above submitted, in practically the same order as above stated.

The first proposition to be disposed of is a motion of defendants to dismiss the appeal for the reasons that Thomas J. McElroy, the original plaintiff, died during the pendency of this appeal, and the cause was never revived in the name of his heirs and devisees, who, they claim, are the real parties in interest, and that the action involved real estate and should have been revived in the name of the heirs and devisees instead of in the name of his executor.

The record discloses that the petition for revivor was filed in this court by John S.

Hunter, to which was attached copies of the will and codicil to the will of Thomas J. McElroy, order admitting will to probate and letters testamentary issued by the county judge of Oklahoma county to John S. Hunter, as executor of said will. The will provides, among other things, that his debts and funeral expenses should be paid, and certain sums of money were devised to each of his six children, and $500 to one of his grandsons, and that the residue was bequeathed to his son, Daniel McElroy, to which will a codicil was attached directing John S. Hunter, who was named as executor in the will, to prosecute this action to a final conclusion, revoking that part of his will where he bequeathed $500 to a grandson, and willed the sum of $2,000 to Mrs. Iola L. Jackson, who nursed him during his last illness, and bequeathed the remainder to his several grandchildren, and directed his executor to sell the lands to which he might have title at public or private sale and apply the proceeds to the carrying out of his will and the codicil thereto. Under such circumstances, the real estate in this action became personal property to be taken charge of by his personal representative, John S. Hunter, executor of the will, under section 11285, Comp. Stats. 1921, which says:

"When a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property, from the time of the testator's death."

We, therefore, conclude that John S. Hunter, being the duly appointed, qualified and acting executor of the will of the plaintiff, was, under the terms of the will, the proper and necessary party in whose name the action should have been revived, and the motion to dismiss the appeal on this account is therefore overruled.

On the main case we find that this was an action of purely equitable cognizance, and the court determined every vital issue in the case against the plaintiff and in favor of the defendants, and the presumption must be indulged that the finding of the trial court upon the issues involved are correct, and the burden of overturning the findings of fact and conclusions of law in this case is upon the plaintiff, and the rule that has been universally established by all the decisions of this court is that the judgment of the trial court will not be reversed unless its findings are clearly against the weight of the evidence.

We have read the entire record in this case carefully, and have examined the able and exhaustive briefs of all the attorneys. We find from this examination that the plaintiff and his wife, Anna McElroy, as alleged in the petition of plaintiff and as appears on the face of the deed itself, executed a warranty deed, absolute on its face, on the 27th day of September, 1899, to the lands involved in this case to Thomas J. Murphy. The evidence shows that, at the same time and before the same notary public, with knowledge of and at the request of the plaintiff and Charles W. Ransom, Thomas J. Murphy, by his warranty deed, conveyed to Edith L. Ransom the west 80 acres of the land in controversy. Both of the above deeds were placed of record on the 27th day of September, 1899. That on the 2nd day of July, 1903, an action was begun in the district court of Kay county, in case No. 2323, wherein T. J. McElroy appears as plaintiff and T. J. Murphy, Edith Ransom, and Charles W. Ransom, and others appear as defendants, in which case the plaintiff alleges that the warranty deed complained of in this action was given by him as security for a loan of $500 by T. J. McElroy, and that the deed executed by him to T. J. Murphy was made with the express agreement and understanding that, when the said $500 was paid, the said T. J. Murphy would reconvey the said lands above described, to him, and that he, at the time, owed his attorney, Charles W. Ransom, the sum of $250, which he was unable to pay, and that it was understood between him, T. J. Murphy, and Charles W. Ransom, that T. J. Murphy should give to him, Charles W. Ransom, suitable security out of said land for the payment of the said $250, and that the said T. J. Murphy, in violation of said agreement, executed and delivered to the said Edith L. Ransom a warranty deed to the west 80 acres. The petition in the above case was signed by D. Lafe Hubler as attorney for plaintiff. Summons was issued in this case and alias summons issued, and the cause was continued for service. On the 15th day of February, 1904, there appears of record in this case a dismissal as follows:

"I hereby dismiss the above entitled action as to all the parties defendant and direct the clerk to enter same of record.

"Dated July 18, 1903, with prejudice.
                        "T. J. McElroy.

"Subscribed and acknowledged before me this the 18th day of July, 1903.
"(Seal)
                        "C. H. Holloway
                        "Notary Public."

Again we find that on the 24th day of

April, 1919, the plaintiff commenced an action in the district court of Kay county, No. 6741, entitled Thomas J. McElroy v. Thomas J. Murphy, alleging that he had executed the deed, but that it was agreed that the same should be considered as a mortgage for the security for the money loaned by Murphy to McElroy, and in both cases the plaintiff prayed for relief as he does in the instant case, that the court declare said warranty deed, executed by him and his wife, to be a mortgage. In the last above mentioned cause, the defendant interposed a demurrer, which was sustained by the court on the 1st day of September, 1919, and the plaintiff given 15 days to file amended petition and to pay the costs in the case within said time, and on the 10th day of October, 1919, the court dismissed the cause on motion of attorney for defendant, and in the journal entry gave as reason therefor that the plaintiff had not complied with the order of the court in filing his amended petition and paying the costs of the action. The present action was filed on the 17th day of May, 1924, by the plaintiff against the defendant Thomas J. Murphy, and Mary A. Sager and Roy C. Kinkaid were made parties defendant at the request of the plaintiff, the last-named parties being the owners of the record title by mesne conveyances from Edith L. Ransom and Charles W. Ransom. It will be observed that the plaintiff seeks the same relief throughout the three cases against his original grantee, Thomas J. Murphy, alleging that he executed a deed intended for a mortgage. The only direct evidence introduced by the plaintiff was his own testimony that the conveyance from him and wife to Thomas J. Murphy was given as security for money advanced to him by Thomas J. Murphy in the sum of between $400 and $500 to perfect his title with the Government of the United States, and he testified that he did not know that the instrument signed by him and his wife was a deed, but thought the same was a mortgage until a short time before the filing of this last action. He denied that he ever authorized D. Lafe Hubler to file action No. 2323. The dismissal of this action above copied in this opinion was submitted to him, and he was asked if he had signed the dismissal, and he answered:

"A. I don't remember a thing about it, if I did I would say so. Q. Is that your signature? A. I could not state positively whether it is or not; it looks like my signature; I could not say positively that it is."

He admitted that he had employed attorneys and authorized the bringing of the second action, No. 6741. He does not claim that he ever paid, or attempted to pay, Thomas J. Murphy the amount of money he admits he received from him on September 27, 1899, nor does he claim that he ever paid, or attempted to pay, his attorney, Charles W. Ransom, the money he admits he owed him for representing him in the contest over the very land which is in controversy here, before the Land Department of the United States. Opposed to his testimony in this regard, the grantee, Thomas J. Murphy, testified that the deed executed to him was given to him as a warranty deed, conveying to him the absolute title to the lands in controversy, for the consideration mentioned in the deed, and in addition thereto for support that he had furnished the McElroy family, prior to the execution of the deed, and that he was to furnish and did furnish after the execution, and he is further contradicted by the testimony of Anna McElroy, his wife, one of the grantors in the deed, who testified positively that the conveyance was an absolute warranty deed and for the considerations as above stated. He is further contradicted by the testimony of the notary public, who took the acknowledgment of the plaintiff, who says that there was nothing mentioned or said at the time of the execution of the instrument that the same was given as security for a debt. He is also contradicted by his own witness, Jarred, who was present at the time the deed was made, who testified that the plaintiff told him that he was going to deed one 80 to Mr. Murphy and the other 80 to Charles W. Ransom, and that he went with the parties to the place where the conveyances were executed, and that he was present when the deeds were executed, one to Murphy and the other to Ransom. He is contradicted by his own son. Joseph C. McElroy, who testified that his father told his mother that he had deeded the place over to her brother to support the family, and "he was through with it, and through with the damn family, and he had deeded the place over to get rid of the damn family." He is also contradicted by his son-in-law, Fred M. McClannahan, who testified that the plaintiff told him that he would not have deeded the place, but that he had been drugged when he signed the deed. The defendant Murphy, Mrs. Anna McElroy, the son, Joseph C. McElroy, and Joe Jarred, all testified that defendant Murphy had furnished support for the family both before and after the deed, and the plaintiff denied this claiming that he had furnished money to Murphy to send to the family. The testimony shows that the defendant

Murphy and the other defendants had paid the taxes on the lands continuously from 1899 down to the date of the trial, and that they had cultivated it and gotten all the rents and profits from it, without being disturbed or interfered with, in any way, by the plaintiff, McElroy. The attorney, D. Lafe Hubler, testified that he had been authorized by plaintiff to bring action No. 2323; and had been furnished with the information upon which the petition was drawn, and that, while his recollection was indistinct as to the transaction that occurred over 20 years before, he testified in this case that his recollection was that the plaintiff, McElroy, handed him the sworn dismissal, heretofore referred to in this case. that was afterwards filed by him. The plaintiff's own pleadings, in each of the three petitions filed by him, in effect, admit that he executed a deed and not a mortgage. In the light of all these contradictions, we are inclined to the opinion that the trial court believed and had a right to believe, all these other witnesses, and record evidence against the uncorroborated testimony of the plaintiff, himself. While we agree with the authorities, cited by counsel, that parol evidence is admissible to show that a deed, absolute on its face, was intended for a mortgage, yet where such contention is made, the rule is that if the plaintiff prevails at all, it must be upon evidence that is cogent, convincing, unequivocal, and satisfactory. See Armstrong v. Phillips, 82 Okla. 83, 198 Pac. 499; Prentice v. Freeman, 76 Okla. 260, 185 Pac. 87; Babcock v. Collison, 73 Okla. 233, 175 Pac. 762. In the case of Hamilton v. Harrington et al., 112 Okla. 79, 239 Pac. 618. this court, in the first paragraph of the syllabus, held:

"An action to have a deed, absolute on its face, declared to be a mortgage, is one of purely equitable cognizance, and, in such cases, it is the duty of this court to weigh the evidence and decide the appeal in accordance therewith; and the burden of proof rests upon the party asserting that the instrument was intended as a mortgage, and such proof must be cogent, convincing, clear, and satisfactory."

Under section 5272, Comp. Stats. 1921, it is provided:

"Every estate in the land, which shall be granted, conveyed, or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

In the case of Herndon v. Shawnee State Bank, 105 Okla. 207, 232 Pac. 432, this court, in construing said provision of the statute, said that:

"To overcome this presumption the party contesting it must make out his case by a preponderance of the evidence."

In the case of Renas v. Green, 88 Okla. 169, 212 Pac. 755, this court said:

"To overcome this presumption and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail."

On the question attempted to be raised by attorneys for plaintiff, that the deed in controversy here was executed prior to patent issued by the government to the plaintiff, it is sufficient to say that the delivery of the patent is a mere ministerial act of the officers, charged with the duty of executing and delivering the same, and when the rights to a patent become perfected the full equitable title passes to purchaser or grantee, and after the entryman has made his final proof. he has a perfect right to sell and convey the land. This is settled by the case of Ketchum v. Pleasant Valley Coal Co., 257 Fed. 274, where it is held that the entryman, having delivered his deed, is estopped to deny the validity of his conveyance and that the validity of the conveyance can only be questioned by the government, and this case further holds that when the patent is issued to the entryman it inures to the benefit of his grantee. See, also, 32 Cyc. 1029.

We, therefore, hold that, under the state of the evidence in this case, the plaintiff failed to establish his claim by a fair preponderance of the testimony; that he did not overcome the presumption that the instrument was an absolute conveyance of the land by evidence, which was clear, unequivocal, and convincing, but. on the contrary, his own evidence was so contradicted by the other evidence in the case, that the trial court was justified in denying him the relief sought, and we are of the opinion that the judgment of the trial court in this case was correct in declaring the deed to be an absolute conveyance of the land to Thomas J. Murphy, and is sustained by the clear weight of the testimony, and, having so found. it is unnecessary to pass upon the other questions raised in this case.

It therefore follows that the judgment of the lower court should be and it is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 1 C. J. p. 225 §458; 13 C. J. p. 859 §25; p. 861 §27. (2) 4 C. J. p. 900 §2869; 2 R. C. L. p. 203; 1 R. C. L.

Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.    (3) 4 C. J. p. 898 §2868; 27 Cyc. pp. 1018, 1025.    (4) 27 Cyc. pp. 1017, 1025; anno. L. R. A. 1916B, 191; 19 R. C. L. p. 263; 3 R. C. L. Supp. p. 927; 4 R. C. L. Supp. p. 1263; 5 R. C. L. Supp. p. 1031.    (5) 27 Cyc. p. 1024.