Moore et al. v. Beverlin.

*99 P. 2d 886.*

No. 28342.   Sept. 26, 1939.

Rehearing Denied March 5, 1940.

Falkenberg & Ernest, E. F. Barry, and John Barry, for plaintiffs in error.

Harry O. Glasser, for defendant in error.

HURST, J.   The purpose of this action is to have a deed, absolute in form, declared a mortgage. The plaintiffs, Elvin D. Moore and Mary E. Moore, were husband and wife, and the land involved was their homestead. After the death of Elvin D. Moore the action was revived and carried on by the administrator of his estate.

On January 13, 1925, plaintiffs borrowed $13,000 from defendant, Beverlin, and executed a mortgage to him covering the land in question as security for payment of the loan. On January 13, 1930, the loan was renewed in the sum of $14,000 to cover principal, defaulted interest, and unpaid taxes, and a new mortgage was executed. This mortgage became delinquent, and thereafter, on February 25, 1931, the parties entered into a contract providing as follows:

"Whereas, Elvin D. Moore and Mary E. Moore, husband and wife, are indebted to F. A. Beverlin, in the sum of fifteen thousand one hundred seven and 96/100 dollars, together with interest thereon from February 17, 1931, at the rate of seven per cent. per annum, payable semiannually, they have deposited in the Citizens Bank of Lamont, Oklahoma, a warranty deed conveying the southeast quarter of section eight (8) township twenty-five (25) north, range three (3) W. I. M. Grant county, Oklahoma, to F. A. Beverlin.

"Now, if the parties of first part sell the above described land for a consideration satisfactory to themselves on or before June 1, 1931, then and in that event the Citizens Bank is authorized to deliver said deed to Elvin D. Moore and Mary E. Moore, provided that the payment is made in full to F. A. Beverlin of the amount due him by virtue of the mortgage he holds on said land together with interest thereon as provided by the note accompanying said mortgage.

"Should the parties of the first part be unable to dispose of the land by private sale on or before June 1, 1931, then and in that event, the parties of the first part agree to immediately arrange to dispose of the land by public auction and to hold sale of same not later than Dec. 1, 1931, and should the land so sell, the party of the second part agrees to carry on the land according to the terms of the existing mortgage the sum equal to one-half of the sum the land brings at public auction.

"It is further agreed that in the event the parties of the first part fail to comply with the foregoing paragraphs of this contract and the mortgage of the party of the second part is not paid by January 1, 1932, the Citizens Bank of Lamont, is hereby authorized to deliver the deed to F. A. Beverlin and the party of the second part shall enter upon the premises, take possession and the deed shall be in full force and effect."

Plaintiffs were unable to make a private sale of the land and offered it for sale at public auction on November 25, 1931. There were no bids on the property at the public sale by anyone other than defendant, and the testimony is conflicting as to whether he bid and whether the auctioneer declared it sold to him. Thereafter, and on January 2, 1932, the bank delivered the deed to defendant. There is some dispute as to the date of the delivery of the deed, and as to whether it was delivered by virtue of the public sale or the contract, but we think the evidence supports the finding of the trial court that the deed was delivered by virtue of the contract and not the sale. Elvin D. Moore was present when the deed was delivered and made no protest. Thereafter, defendant leased the premises to plaintiffs for agricultural purposes and they remained on the premises as defendant's tenants until September, 1934, at which time they voluntarily vacated the premises and surrendered possession to defendant. This action was commenced on July 27, 1936. The trial court found that the deed was intended as an absolute conveyance of the property and rendered judgment for defendant. Plaintiffs bring this appeal.

1. Plaintiffs contend that the deed, at the time of its execution, was intended to be defeasible and is a mortgage and that its deposit in escrow under the contract was merely additional security for the extension of the debt, and such being the case, that the last paragraph in the contract authorizing delivery of the deed to defendant is void as an attempt to waive the equity of redemption in advance.

Plaintiffs assert the invalidity of the contract by virtue of section 10946, O. S. 1931 (42 Okla. St. Ann. § 11), and the holding in Messner v. Carroll (1916) 60 Okla. 90, 159 P. 362, and Holden Land & Live Stock Co. v. Interstate Trading Co. (1912, Kan.) 123 P. 733, L. R. A. 1915 B, 492.

Section 10946 provides:

"All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void, except in the case specified in section 1122."

Section 1122 therein referred to is not applicable here.

This statute is a legislative enactment of the principle, firmly established in equity, that the right of redemption constitutes an integral part of every mortgage and neither by a stipulation in the mortgage itself, nor by any separate contemporaneous agreement, nor by giving a deed intended as a mortgage, is it possible for the mortgagor to waive his equitable right to redeem. 2 Jones, Mortgages (7th Ed.) § 1045; 3 Pomeroy, Eq. Jur. § 1193; 42 C. J. 348, § 2075.

The application of this principle makes ineffectual the delivery of a deed in escrow at the time the note and mortgage are given, on condition that if the mortgagor does not pay his debt promptly when due the deed shall be delivered to the mortgagee. Plumber v. Ilse (1905, Wash.) 82 P. 1009.

The cases of Messner v. Carroll and Holden Land & Live Stock Co. v. Interstate Trading Co., relied on by plaintiffs, extend the rule to similar escrow con-

tracts made subsequent to the execution of the mortgage, where it appears from the contract itself and conduct of the parties that the execution of the deed absolute in form and its deposit in escrow is merely a change in the form of the security upon a renewal of the loan or an extension of the time for its payment.

On the other hand, it is equally well established that the mortgagor may, subsequent to the execution of the mortgage, sell the mortgaged premises to the mortgagee in satisfaction of the debt, though the transaction is subject to scrutiny by the courts, and will not be enforced unless it is free from fraud, oppression, or undue advantage. 42 C. J. 350, § 2075; 41 C. J. 770-771, § 863; 2 Jones, Mortgages (7th Ed.) §§ 711, 771; 19 R. C. L. 386, § 160. In Doggett v. Johnson (1928, Mont.) 267 P. 292, it is said:

"The oft-quoted legal maxim 'once a mortgage, always a mortgage' is undoubtedly to be read and considered with this limitation: 'Once a mortgage, always a mortgage' until the parties to it agree to treat it differently and do so treat it, in which case it loses its character as a mortgage."

Not only has this rule been applied to an absolute present sale of the mortgaged premises to the mortgagee, but is also applied to sales under agreements by which the mortgagor retains a right to repurchase the property for a given amount and within a stated time (Haynes v. Rosenfield [1924] 99 Okla. 158, 225 P. 975; Shaner v. Rathdrum State Bank [1916, Idaho] 161 P. 90; Pittwood v. Spokane Savings & Loan Soc. [1926, Wash.] 251 P. 283; Ditto v. Bank of Gillette [1928, Wyo.] 264 P. 1013), or to sell it to a third person and take the excess of purchase money over the amount of the mortgage debt. Gutschenritter v. Hosterman (1924, Wis.) 230 N. W. 610.

In Haynes v. Rosenfield, supra, this court quoted with approval from Wagg v. Herbert (1907) 19 Okla. 525, 92 P. 250, as follows:

"In Watson v. Edwards (Cal.) it was held that section 2889 of the Civil Code does not affect or refer to a subsequent contract between the mortgagor and mortgagee in respect to the title to the mortgaged premises, and it is said: 'A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, where the transaction is fair, honest, and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee.' We concur with this doctrine announced by the California court, which counsel states is based upon a statute identical with ours. It will thus be seen that the doctrine announced by the California courts is in full harmony with the doctrine announced by the Supreme Court of the United States in the case of Russell v. Southard, supra, and in harmony with the views herein stated. It holds, as all the courts hold, that a mortgagee may purchase from the mortgagor if the transaction is fair, honest, and without fraud or undue influence, and where no unconscionable advantage is taken by virtue of the relation existing between the mortgagor and mortgagee."

Thus, by this decision, we have adopted the rule established in California under a statute identical with section 10946, O. S. 1931, that the statute does not prohibit contracts between mortgagor and mortgagee, made after the mortgage debt is created, by which the mortgagee purchases the mortgaged premises. See, also, McRoberts v. Citizens Nat. Bank of Muskogee (1937) 180 Okla. 237, 69 P. 2d 56.

That there is a reasonable and practical basis for the rule is pointed out in Pittwood v. Spokane Savings & Loan Soc., supra, where it is said:

"A foreclosure would entail a very considerable additional expense for attorney's fees and costs and would interfere more or less with a sale of the property. The appellants had no immediate hope of paying the indebtedness. Under these conditions they did that which many another man has done under identical circumstances, to wit, gave the absolute title to the mortgagee in satisfaction of the indebtedness, with the right to repurchase within a year for the amount of that indebtedness plus interest, taxes, and other sums paid."

Having upheld deeds to the mortgagee with the right of repurchase by the mortgagor, the courts have seen no reason why the same could not be done by way of escrow agreements. Consequently, the courts have upheld the delivery of a deed in escrow made after the mortgage debt is created and on condition that if the mortgagor fails to pay a specified sum or the amount of the mortgage debt within a stated time the deed shall be delivered to the mortgagee, where it appears from the contract itself and the conduct of the parties that the deed and contract represent a conditional sale rather than an extension of the mortgage. Bradbury v. Davenport (1898, Cal.) 52 P. 301 (construing a statute identical with section 10946, O. S. 1931); Ravnaas v. Andrich (1932, S. D.) 244 N. W. 361; Ruden v. Kirby (1932, S. D.) 241 N. W. 791; 65 A. L. R. 120, note.

In truth, such an escrow agreement is neither clearly an extension of the mortgage nor a sale, and the real question in all of the cases of this type is whether the particular contract involved, considered in connection with the conduct of the parties, more nearly resembles a mortgage or a sale. The intention of the parties governs and each case must be controlled by its own facts. Ditto v. Bank of Gillette, supra. The intention is to be gathered from the circumstances attending the transaction and the conduct of the parties, as well as from the written contract itself. Edmundson v. State (1937) 181 Okla. 150, 73 P. 2d 150; 3 Pomeroy's Eq. Jur. § 1195. The most significant single factor is the continued existence of the debt after the execution of the contract and the deposit of the deed in escrow.

The finding of the trial court that the execution of the deed and contract constituted a conditional sale and not an extension of the mortgage is not against the clear weight of the evidence. At the time the contract was entered into defendant already had a mortgage covering the property which was in default and could have instituted foreclosure proceedings at any time. It is highly improbable that one already having a mortgage would take another in the form of a deed on the same property to secure the same debt, which would not constitute as good security as the mortgagee already had. Ditto v. Bank of Gillette, supra; Ruden v. Kirby, supra; Ravnaas v. Andrich, supra.

In Ditto v. Bank of Gillette, supra, quoting from Bailey v. Trust Co. (1905, Mo.) 87 S. W. 1003, the court said:

"At the time they were executed the defendant had a deed of trust on the property to secure its debt and it is sheer nonsense to suppose that they would have exchanged this better form of security for such a mortgage."

In Ruden v. Kirby, supra, it is said:

"Here the Parker bank already had mortgages, and the intention is plain that the deed was not to secure a debt for which it already had security, but was by way of sale and in extinguishment of the pre-existing debt."

There is no direct evidence as to whether or not the debt continued to exist. It is true that defendant testified that had the mortgagors paid the amount of the pre-existing indebtedness at any time prior to the delivery of the deed out of escrow, he would have accepted same and the deed would be returned, although it is to be noted that the contract did not so provide. However, this is entirely consistent with a conditional sale wherein the mortgagors are given the right to repurchase.

It is also true that the notes and mortgages themselves were never delivered up or formally canceled, but this is explained by the defendant's testimony that he did not think it necessary. In Ditto v. Bank of Gillette, supra, it was said that "the failure of the bank to release the mortgage was a circumstance of little or no importance on the question of the continuance of the mortgage indebtedness."

Plaintiffs had executed two mortgages to defendant prior to the transaction involved here, and in each instance they were unable to meet their mortgage obligations. Defendant testified that the

contract in question was entered into "to try to work out—so that he could have something over and above the loan," and it was either "to get that done or start foreclosure proceedings." We think the real intention of the parties was that this contract was in effect an agreed foreclosure, made to avoid a foreclosure in court with the attendant attorney fees, court costs, and a possible deficiency judgment to burden the mortgagors, and the only difference between it and a present sale is that here the mortgagors were given an opportunity to sell the land to someone else if they could do so at a profit.

This interpretation of the contract was placed thereon by the parties themselves by their subsequent conduct. After the delivery of the deed the plaintiffs secured an agricultural lease from the defendant and occupied the premises as tenants, paying rent for several years, and then voluntarily gave possession to defendant. They made no inconsistent claim until the defendant had leased the premises for oil and gas purposes and a well was commenced in the vicinity a short time before this action was commenced, which no doubt precipitated the filing of this action.

The cases relied on by plaintiffs are distinguishable on their facts. In Holden Land & Live Stock Co. v. Interstate Trading Co., it appears that the mortgagors, after making the escrow agreement, retained possession, made lasting improvements, and conducted themselves as if it was their own property. The court found that the conduct of the parties "was such as to preclude the defendants from denying to the plaintiffs a right to redeem the property," and, further, that at the time of the contract there involved the land was worth $60,000 above the liens against it. A discrepancy in the value of the land and the debt is a material factor to be considered. Pittwood v. Spokane Savings & Loan Soc., supra. Here, however, we cannot say that it is sufficient to be material.

For a decision by the Kansas Supreme Court, sustaining a conveyance of the mortgaged property by the mortgagor to the mortgagee, under a state of facts more like those in the instant case, see Wilson v. Stafford (1927) 124 Kan. 382, 260 P. 627.

In Messner v. Carroll, supra, the contract itself provided that the mortgagors place in escrow with the deed a note to secure payment of the interest on the mortgage indebtedness during the period of time the deed was held in escrow, and also the mortgagors refused to relinquish possession after delivery of the deed.

These facts in the cases cited tend to show that the transactions there involved were in the nature of mortgages rather than a sale, as in the instant case.

2. Plaintiffs contend that defendant "chilled" the sale at the public auction and breached the escrow agreement, and therefore the delivery was ineffectual to bind his wife, but suffice it to say that the evidence does not bear out this contention.

3. The next contention of plaintiffs is that under section 2, art. 12, of the Oklahoma Constitution, the homestead cannot be alienated except by written instrument subscribed by both husband and wife; that since the provision in the contract authorizing delivery of the deed was void because violative of section 10946, supra, there was no signed agreement by both parties authorizing the transfer of the homestead; and that the oral authorization of the husband to the bank could not operate as a valid conveyance for him or his wife. This contention must fail in view of our holding as to the validity of the contract. The escrow contract authorizing the delivery of the deed was signed by both husband and wife. By it, the wife and husband properly consented to the delivery of the deed when the contingencies named therein occurred.

Judgment affirmed.

OSBORN, CORN, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J., WELCH, V. C. J., and RILEY and GIBSON, JJ., dissent.