**LINCOLN MORTGAGE INVESTORS, a business trust, Appellant,**

v.

**J.J. COOK, an individual; John R. Methvin and Kie Methvin, husband and wife; Hoshall F. Thomas and Oleta I. Thomas, husband and wife, Appellees.**

No. 57017.

Supreme Court of Oklahoma.

Nov. 23, 1982.

As Corrected March 21, 1983.

Rehearing Denied March 22, 1983.

McAfee & Taft by Joseph H. Bocock, Oklahoma City, for appellant.

Spradling, Alpern, Friot & Gum by Paul Walters, Oklahoma City, for appellee, J.J. Cook.

Talley & McIlroy by Robert N. McIlroy, Norman, for appellees, John R. Methvin, Kie Methvin, Hoshall N. Thomas and Oleta I. Thomas.

DOOLIN, Justice:

This case presents an issue of first impression in Oklahoma: the validity of due-on-sale clauses in mortgages when the lender is not a federal lending institution.[1] Specifically at issue is whether the due-on-sale clause is invalid *per se* as a clog on the equity of redemption; if not, whether the due-on-sale clause is unenforceable as an unreasonable restraint on alienation absent a showing by the lender that his security has been impaired and/or that foreclosure is fair, reasonable and equitable under the circumstances. We must respond to both in the negative.

Lincoln Mortgage Investors (Mortgagee), a California business trust, brought suit in district court against J.J. Cook (Mortgagor) and the Thomases and Methvins (Buyers) to foreclose a mortgage in default under a due-on-sale clause. The cause was submitted to the trial judge on a stipulation of facts, briefs and affidavits of the parties.

On March 1, 1976 Mortgagor and Mortgagee renegotiated a note seriously in default for nonpayment. The Mortgagee had elected to allow the Mortgagor time to sell the commercial property securing the note or to refinance rather than foreclosing. The Mortgagee agreed to refinance the loan when it became apparent that Mortgagor could not find a buyer or new lender. The new agreement was evidenced by a new promissory note and a modification and renewal of the pre-existing mortgage. Both instruments contained acceleration clauses.[2] The mortgage also contained a provision allowing renegotiation of the interest rate on transfer of the property at the Mortgagee's option.[3]

On October 18, 1979, Mortgagor transferred the property by warranty deed to Buyers without seeking prior written consent from Mortgagee. Mortgagee first learned of the transfer when Buyers tendered the monthly payment required by the note. Mortgagee refused the tendered payment and promptly elected to exercise the due-on-sale clause. Mortgagor refused to recognize that the unpaid balance of the mortgage debt was immediately due and payable under the acceleration clause. Mortgagee acknowledges that its motives in exercising

---

1. We noted in *Smith v. Frontier Fed. Savings & Loan Ass'n.*, 649 P.2d 536 (Okl.1982) that the United States Supreme Court has recently determined that federal regulations regarding due-on-sale clauses pre-empts state law when the lender is a federal savings and loan association. *Fidelity Federal Savings & Loan Ass'n. v. de la Cuesta*, —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

2. The typewritten note contained the following provision in pertinent part:
   "Upon the breach of any promise made in this note, or in the mortgage, ... the entire indebtedness shall become due, payable and collectible then or thereafter as the holder may elect, regardless of the date of maturity hereof ...."
   The relevant provisions of the modified mortgage, incorporating by reference all terms and provisions of the original mortgage, are:

   "C. Right of Mortgagee to Accelerate Note on Transfer. Should Mortgagor voluntarily ... sell, convey, transfer, dispose of by contract of sale ... or otherwise assign or alienate or further encumber said subject property, or any part thereof or any interest therein, or agree to do so without the written consent of Mortgagee first being obtained, the Mortgagee shall have the right, at its option, to declare all sums secured hereby forth with due and payable."

3. "If Mortgagee gives its written consent, Mortgagee agrees ... to otherwise comply with all terms and conditions required by the Mortgagee which may include ... the execution of any agreement modifying the interest rate or payments ..."

the due-on-sale clause were primarily to divest itself of Oklahoma property interests and secondarily to protect itself from rising interest rates.

The trial court made the following conclusions of law:

"1. Under Oklahoma law, a mortgagee may not foreclose a mortgage by invoking a due-on-sale clause unless foreclosure is fair, reasonable and equitable under the circumstances of the specific case in dispute.

2. Under Oklahoma law, a mortgagee may not foreclose a mortgage by invoking a due-on-sale clause unless the mortgagee can demonstrate that its security has been impaired by the unauthorized transfer.

3. Plaintiff has admitted . . . that [its] primary motive in foreclosing under the instant due-on-sale clause was to divest itself of the mortgaged real property and that [its] secondary motive in foreclosing . : . was . . . to protect itself against rising interest rates. These are not proper motives for foreclosure, under the circumstances of this case, and thus foreclosure in this case would be unfair, unreasonable and inequitable.

4. Plaintiff has demonstrated no impairment to its security.
. . . "

Judgment was entered for Mortgagor and Buyers; Mortgagee appeals from this judgment, asserting as error all of the above conclusions of law. Mortgagor supports the holdings of the trial court and also argues that the due-on-sale clause is invalid *per se* as a clog on the equity of redemption, an issue raised, but not decided, below.

### CLOGGING THE EQUITY OF REDEMPTION

The doctrine prohibiting "clogs" on the equity of redemption is of equitable origin.

It is codified in Oklahoma in 42 Okla.Stat. 1981, § 11.[4]

Simply stated, the doctrine voids any provision in an original mortgage agreement limiting or modifying the right of redemption by payment of the full mortgage debt after default for any reason. Osborne, *Mortgages,* 144–147 (2nd Ed.1970). Examples of contract provisions which have been struck down as impermissible clogs are: limitations on the time period in which to redeem, warranties not to redeem, limitations on who may redeem, provisions giving the Mortgagee an option to purchase on default and limitations on the quantity of property that may be redeemed. *Id.* at 146.

Mortgagor relies primarily on *Coursey v. Fairchild*[5] in arguing that due-on-sale clauses fall within the class of clogs. In *Coursey,* this Court struck down an agreement by the Mortgagor to transfer mineral interests in the mortgaged property to the Mortgagee in consideration for renewal of the mortgage after default. Such an agreement was held to clog the equity of redemption because it prevented the Mortgagor from reacquiring the entire mortgaged property on payment in full of the mortgage debt. We stated:

"In a jurisdiction such as ours, where the common law doctrine of mortgages has been abrogated and an equitable theory of mortgages prevails, what is meant by a right to redeem is that upon discharge of the debt within the maximum permissible time, the Mortgagor is entitled, by force of law, to have the mortgaged premises relieved from the lien and his entire estate restored to that extent which he would have had if the transaction had never taken place." 436 P.2d at 38 citing *Worley v. Carter,* 30 Okl. 642, 121 P. 669, 673 (1912).

4. 42 Okla.Stat.1981, § 11 provides:
"All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation and all contracts in restraint of the right of redemption from a lien, are void except in the case specified in § 1122."

42 Okla.Stat. § 1122 now appears as 15 Okla. Stat.1981, § 518 and concerns the surrender of property by a finder to the owner.

5. 436 P.2d 35 (Okl.1967).

Mortgagor interprets the language "right to redeem ... within the maximum permissible time" as creating a right in mortgagors to make installment payments, after default, as set out in the mortgage. He argues that a provision giving the Mortgagee the option to accelerate the loan debt clogs both his and Buyers' rights to redeem because it prevents them from making installment payments over the life of the loan. We believe Mortgagor has misinterpreted *Coursey* and has failed to understand the nature both of the right to redeem and of acceleration clauses.

■■■ The right to redeem means no more than a second opportunity for a Mortgagor in default to pay the mortgage debt in full, discharge the lien and acquire unencumbered title to the mortgaged property. This right is exercisable any time between default and confirmation of the sheriff's sale.[6] A precondition to curing a default is tender of the mortgage debt in full. *Mid-State Homes, Inc. v. Jackson,* 519 P.2d 472, 476 (Okl.1974).

An acceleration clause is an agreement between the parties to a mortgage advancing the due date of the mortgage indebtedness in the event of default or breach by the Mortgagor. Acceleration clauses have generally been held legal, valid and enforceable. *Murphy v. Fox,* 278 P.2d 820, 824 (Okl.1955); *Union Central Life Ins. Co. v. Adams,* 169 Okl. 572, 38 P.2d 26 (1935); *Bollenbach v. Ludlum,* 84 Okl. 14, 201 P. 982 (1921). A due-on-sale clause is a particular type of acceleration clause: here, the default triggering acceleration of the mortgage debt is failure of the Mortgagor to obtain prior written consent by the Mortgagee to a transfer of an interest in the mortgaged property.

■■ The foregoing discussion makes clear that the language relied upon by Mortgagor in *Coursey* merely restates the general principle that mortgagors in default have a right to redeem the mortgaged property by tender of the full unpaid amount of the mortgage debt after default for the maximum time allowed by law, i.e. until confirmation of the sheriff's sale. *Coursey* does *not* establish the proposition that any mortgage provision altering the due date of the mortgage debt on default is invalid *per se* as a clog on the equity of redemption. *Coursey* does *not* give a right to continued enjoyment of the benefits of a mortgage agreement to one who has breached its terms.

■■ The instant due-on-sale clauses do not require forfeiture of the mortgaged property on unauthorized transfer; nor do they purport to nullify or limit Mortgagor's or Buyers' right to redeem on default. We hold that the due-on-sale clauses do not constitute a clog on the equity of redemption.

### RESTRAINT ON ALIENATION

The controversy about the validity of due-on-sale clauses is largely the result of a clash between principles of property and contract law: that is, the equitable principle prohibiting unreasonable restraints on alienation and common law freedom to contract. Courts taking the former position, such as the California Court in *Wellenkamp v. Bank of America,*[7] insist that in order for enforcement of a due-on-sale clause to be reasonable, the mortgagee must show that his security has been impaired by the unauthorized transfer. Courts adopting a contract position see the due-on-sale clause as a reasonable business practice designed to protect the Mortgagee from risks inherent

---

**6.** 42 Okla.Stat.1981, § 18 provides:

"Every person having an interest in property subject to a lien has a right to redeem it from the lien at any time after the claim is due and before his right of redemption is foreclosed." The right of redemption is foreclosed when the sheriff's sale is confirmed. *Mills v. Reneau,* 411 P.2d 516, 520 (Okl.1965).

**7.** 21 Cal.3d 943, 582 P.2d 970, 148 Cal.Rptr. 379 (1978). See also *Tucker v. Pulaski Federal Savings & Loan Ass'n.,* 252 Ark. 849, 481 S.W.2d 725 (1972).

in transfer of mortgaged property.[8] There are a variety of intermediate positions.[9]

■ We hold that the validity of a due-on-sale clause is to be determined by principles of contract law. As previously noted, acceleration clauses have generally been enforced as written in Oklahoma.[10] In *Continental Federal Savings & Loan Association v. Fetter,* 564 P.2d 1013 (Okl.1977), we stated that "acceleration clauses are bargained-for elements of mortgages and notes to protect the Mortgagee from risks connected with the transfer of mortgaged property." 564 P.2d at 1017.

■ Here, Mortgagor and Mortgagee entered transactions concerning commercial property. Both parties were presumably knowledgeable about such transactions. The option to exercise the due-on-sale clause was a contractual right afforded to Mortgagee by the note and mortgage and amply supported by consideration. As we have stated in the past:

> "In the absence of fraud, duress, undue influence or mistake, the fairness, unfairness, folly or wisdom or inequality of contracts are immaterial. Such questions are exclusively within the right of the contracting parties to adjust at the time of entering into the contract." *State ex rel. Derryberry v. Kerr-McGee Corp.,* 516 P.2d 813, 820 (Okl.1973) quoting *Johnson*

*v. Richards,* 99 Okl. 254, 226 P. 559, 560 (1924).

A party's motives in exercising a contractual right are immaterial.[11] It should be noted that Mortgagor herein is not being penalized for a technical default resulting from inadvertence or mistake. The record shows no effort on the part of Mortgagor to comply with the terms of the mortgage.

None of the circumstances permitting review of the fairness of a contract appear in this case. Mortgagee's right to exercise the due-on-sale clause must be upheld as a bargained-for element of the note and mortgage.

REVERSED AND REMANDED with directions to foreclose.

IRWIN, C.J., and LAVENDER, SIMMS, HARGRAVE and WILSON, JJ., concur.

OPALA, J., concurs in part, dissents in part.

BARNES, V.C.J., and HODGES, J., dissent.

OPALA, Justice, concurring in part and dissenting in part:

I concur in the court's holding that a due-on-sale mortgage clause under consideration herein does not effect an impermissible restraint on alienation; I dissent from

8. The primary justification for due-on-sale clauses is, of course, protection of the lender's security. In recent times, mortgagees have sought to protect themselves from the risks of spiraling inflation. A number of courts have accepted this as a reasonable business practice. Cf. *Malouff v. Midland Federal Savings & Loan Association,* 181 Colo. 294, 509 P.2d 1240 (1973); *Gunther v. White,* 489 S.W.2d 529 (Tenn.1973).

9. For example, a distinction may be made between commercial and residential borrowers. See *Holiday Acres No. 3 v. Midwest Federal Savings & Loan Association,* 308 N.W.2d 471 (Minn.1981).

10. *Murphy v. Fox,* 278 P.2d 820, 825 (Okl. 1955).

11. We find persuasive the Texas Court of Appeal's analysis of a due-on-sale clause in *Crestview, Ltd. v. Foremost Insurance Co.:*

> "The wording of the clause is singularly inapt to express a contractual intention that it be narrowly limited in its effect to one particular circumstance, that is, where a sale by the owner threatens to impair the security of the debt ... The contracting parties expressly provided and therefore intended that [lender] have the contractual right to reexamine ... the arrangement in its entirety *on any sale* of the property ... and to accelerate the ... debt if the owner sold the property without [lender's] approval. We believe this interpretation is compelled by the very language used in the clause ... Therefore, rather than assuming that the "due-on-sale clause" must have been inserted in the deed of trust only to protect the note holder's security, it seems plain that we cannot ignore the fact that there is an equal likelihood that it might have been bargained for and included for other purposes as well." 621 S.W.2d 816, 820, 821 [Tex.Civ.App.1981]. (Emphasis in the original).

that part of the court's pronouncement by which that due-on-sale clause is declared not to violate Oklahoma's statutory version of the Chancery rule against "clogging" the equity of redemption. 42 O.S.1981 § 11 and 46 O.S.1981 § 1. *Coursey v. Fairchild,* Okl., 436 P.2d 35 [1967]. A clause that so drastically fetters a borrower's capacity to transfer the lien-encumbered title to his land passes to the lender an essential ingredient of the owner's *ius disponendi.* It is hence a "clog" in the sense of the rule-prohibited "collateral advantage" to the lender.[1] *Coursey v. Fairchild,* supra. The burden it imposes by automatically accelerating the obligation on sale is not related to a specific security-impairing event. The clause is also a violation of the equitable theory of mortgages codified in 42 O.S.1981 §§ 5 and 10. *Coursey v. Fairchild,* supra, and *Rives v. Mincks Hotel Co.,* 167 Okl. 500, 30 P.2d 911 [1934].

A mortgage provision by which *any* incident of the borrower's title is surrendered—however slightly—to the will of the lender—directly or obliquely—must be deemed to contravene all the basic concepts applied in equity to a land security transaction. These are: (a) a lender is not allowed to exact a greater interest in his borrower's estate than a lien to be impressed as security for the debt, 42 O.S.1981 § 5; *Balduff v. Griswold,* 9 Okl. 438, 60 P. 223 [1900] and *Moore v. Beverlin,* 186 Okl. 620, 99 P.2d 886 [1940]; and (b) "[n]otwithstanding an agreement to the contrary", a borrower retains in his lien-encumbered estate all the incidents of ownership free and clear of any title claim of the lender, 42 O.S.1981 § 10 and 46 O.S.1981 § 1; *Coursey v. Fairchild,* supra; *Hunter v. Murphy,* 124 Okl. 207, 255 P. 561 [1927] and *Kinch v. Pierson,* 97 Okl. 109, 223 P. 144 [1924]. Because a due-on-sale clause does in fact invest the lender with power to prevent or impair alienation of the lien-encumbered land, it transfers to him *an incident* of the borrower's title. This is clearly offensive to our statutory scheme of regulations that govern real es-

tate security transactions. That scheme requires strict adherence to the equitable theory of mortgages. *Rives v. Mincks Hotel Co.,* supra, and *Sanders v. Hall,* 74 F.2d 399 [10th Cir.1934], cert. denied 295 U.S. 739, 55 S.Ct. 653, 79 L.Ed. 1686 [1935].

---

1. Osborne, Law of Mortgages, p. 144 [2nd ed.] and Jacoway, Mortgages—A Catalogue and Critique on the Role of Equity in the Enforce- ment of Modern-Day "Due-On-Sale" Clauses, 26 Arkansas Law Review 485, 490 [1973].